The **SCHOOL DISTRICT OF PHILADELPHIA,** Petitioner,

v.

**INDEPENDENCE CHARTER SCHOOL, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 7, 2001.

Decided May 3, 2001.

Jackie B. Sparkman, Philadelphia, for petitioner.

Eric L. Cramer, Philadelphia, for respondent.

Before DOYLE, President Judge, COLINS, Judge, SMITH, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, KELLEY, Judge and LEADBETTER, Judge.

FRIEDMAN, Judge.

The School District of Philadelphia (School District) appeals from the July 28,

2000 order of the State Charter School Appeal Board (CAB) granting the appeal filed by the Independence Charter School Initiative (Independence) pursuant to section 1717–A(g) of the Charter School Law (CSL)[1] and directing the School District's Board of Education (District Board) to grant Independence's charter school application and sign Independence's charter.[2] We affirm the CAB's order.

On November 15, 1999, Independence filed an application with the School District for a charter to operate a charter school in the City of Philadelphia.[3] (CAB's Findings of Fact, No. 2.) The School District accepted the charter application for review and, on December 14, 1999, held its first and only public hearing on the matter.[4] (CAB's Findings of Fact, No. 4.) Section 1717–A(e)(1) of the CSL provides that *"Not later than* seventy-five (75) days after the first public hearing on the application, the local board of school directors *shall* grant or deny the application." 24 P .S. § 17–1717–A(e)(1) (emphasis added). However, by February 28, 2000, seventy-five days after the date of the first public hearing on Independence's charter school application, the District Board still had not voted on the application as required by the CSL.[5] (CAB's Findings of Fact, No. 8.)

Consequently, on February 29, 2000, Independence filed a petition to appeal with the CAB, seeking review of its charter

---

1. Act of March 10, 1949, P.L. 30, *added by* the Act of June 19, 1997, P.L. 225, 24 P.S. § 17–1717–A(g).

2. Section 1717–A(h) of the CSL, 24 P.S. § 17–1717–A(h), provides that a decision by the CAB under section 1717–A(g) to grant a charter shall serve as a requirement for the local board of directors of a school district to sign the written charter of the charter school as provided for in section 1720 A of the CSL, 24 P.S. § 17–1720–A.

3. Independence was one of twenty-three applicants filing such charter school applications pursuant to section 1717–A(c) of the CSL, 24 P.S. § 17–1717–A(c). (R.R. at 8a–9a, 21a–23a.)

4. Under section 1717–A(d) of the CSL, 24 P.S. § 17–1717–A(d), the local board of school directors in which the proposed charter school will be located must hold at least one public hearing on the provisions of the charter application within forty-five days of the application's receipt. At the December 14, 1999 public hearing on Independence's application, Independence presented several of its members to give presentations and answer questions in support of the application. In addition to the testimony given at the public hearing, Independence presented other testimony and supplementary materials supporting the charter application. (CAB's Findings of Fact, Nos. 3–7.) The Independence charter application was reviewed by the School District staff and by an independent review panel engaged by the School District for that purpose. (R.R. at 256a–63a, 328a–33a.)

5. The School District links the District Board's failure to act within the prescribed time limits to political considerations. During the general elections of November 1999, Philadelphia voters voted to change the Education Supplement to the Philadelphia Home Rule Charter as it concerns the time of appointment, term of office, and removal of members of the District Board. The changes to the Home Rule Charter empowered the Mayor of Philadelphia to remove appointed District Board members and to appoint new members to terms coterminus with his own. (R.R. at 10a–18a.) The last meeting of the District Board before the change to the Home Rule Charter occurred on February 22, 2000. (R.R. at 3a.) At that time, the lame duck District Board voted to defer action on charter school applications to the new District Board that the Mayor was set to appoint. (R.R. at 439a–40a.) On March 1, 2000, Philadelphia's new Mayor appointed a new District Board. The new District Board was sworn into office on March 3, 2000 and held its first public meeting on March 13, 2000. On that date, ninety days after the first public hearing on the twenty-three charter school applications, the District Board finally voted, granting eight of the applications and denying fifteen others, including the application filed by Independence. (R.R. at 21a–23a.)

school application pursuant to section 1717–A(g) of the CSL, 24 P.S. 17–1717–A(g). (CAB's Findings of Fact, No. 9, R.R. at 438a–42a.) That subsection of the CSL provides:

Notwithstanding the provisions of subsection (e)(5),[6] failure by the local board of directors to hold a public hearing *and* to grant or deny the application for a charter school within the time periods specified in subsections (d), (e) and (f) [7] shall permit the applicant for a charter to file its application *as an appeal* to the [CAB]. In such case, the [CAB] shall review the application and make a decision to grant or deny a charter based on the criteria established in subsection (e)(2).[8]

24 P.S. § 17–1717–A(g) (emphasis added).

On March 13, 2000, after Independence took its appeal to the CAB, the District Board voted to deny Independence's charter school application, as set forth in the official minutes of the District Board and by letter, dated March 22, 2000, sent to representatives of Independence and to the Secretary of Education. (CAB's Findings of Fact, No. 10; R.R. at 446a, 450a–51a.) Nevertheless, on March 14, 2000, the CAB accepted Independence's appeal and simultaneously assigned the appeal to a hearing officer. In response, the School District filed a motion to dismiss Independence's appeal pursuant to 1 Pa.Code § 35.178, claiming that, in view of the School District's prior denial of the application, the CAB lacked subject matter jurisdiction over the matter. (*See* R.R. at 2a–7a.)

On May 31, 2000, the CAB denied the School District's motion to dismiss. (CAB's 5/31/00 op. at 6, School District's brief, Exhibit B.) Although the CAB agreed with the School District that the seventy-five-day time limitation imposed by section 1717–A(e)(1) of the CSL is directory rather than mandatory, the CAB concluded that Independence's filing of its appeal under section 1717–A(g) on February 29, 2000 vested the CAB with original jurisdiction over the then undecided charter application. Having retained jurisdiction, the CAB conducted its own review of, and hearing on, Independence's charter school application. On July 28, 2000, the CAB issued its order granting Independence's appeal and directing the School District to grant Independence's charter school application and sign Independence's charter. (See School District's brief, Exhs. A and B .) The School District's appeal to this court followed.[9]

---

**6.** This subsection requires that written notice of the local school board's action be sent to the applicant, the department and the CAB. In the case of the denial of an application, the notice sent to the applicant must clearly state the reasons for that denial. *See* 24 P.S. § 1717–A(e)(5).

**7.** Subsection 1717–A(d) of the CSL requires that within forty-five days of receipt of a charter school application, the local school board in the district where the proposed charter school will be located hold at least one public hearing on the charter school application. 24 P.S. § 17–1717–A(d). Subsection 1717–A(e)(1) of the CSL, which is applicable here, requires that the local board of school directors grant or deny a charter school application no later than seventy-five days after the first public hearing on the application. 24 P.S. § 17–1717–A(e)(1). Subsection 1717–A(f) of the CSL deals with revised charter applications and is not relevant in this case.

**8.** These are the identical criteria that the local school board uses to evaluate a charter school application.

**9.** All decisions of the CAB are subject to appellate review by this court. Section 1717–A(i)(10) of the CSL, 24 P.S. § 17–1717–A(i)(10). Therefore, we shall affirm the CAB's determination unless we determine that the adjudication is in violation of constitutional rights, or is not in accordance with law, or is not supported by substantial evidence. Sec-

On appeal to this court, the School District first argues that, under the circumstances presented, the CAB erred in concluding that it possessed original jurisdiction over Independence's charter appeal pursuant to section 1717–A(g) of the CSL. Specifically, the School District contends that, having correctly determined that the time limitation for local school board decisions on charter school applications is directory rather than mandatory, the CAB erred by retaining jurisdiction over the Independence application after the District Board acted on it.[10] We disagree.

Initially, we express our disagreement with the underlying premise of the School District's argument, that is, that the seventy-five day time period in section 1717–A(e)(1) of the CSL is directory rather than mandatory. Contrary to both the School District and the CAB, we disagree that the language of section 1717–A(e)(1) of the CSL merely is directory when it states: "*Not later than* seventy-five (75) days after the first public hearing on the application, the local board of school directors *shall* grant or deny the application."

Whether a particular provision of a statute is directory or mandatory does not depend upon its form but upon the legislative intent, to be ascertained after considering the entire statute, its nature, its object and the consequences that would result from a particular construction. *Deibert v. Rhodes*, 291 Pa. 550, 140 A. 515 (1928); *Philadelphia Gas Works ex rel. City of Philadelphia v. Commonwealth*, 741 A.2d 841 (Pa.Cmwlth.1999). In deciding whether "shall" should be interpreted as mandatory or merely directory when it relates to the time of doing some act, "shall" has been generally regarded as directory, *unless time is of the essence* or the statute indicates that the provision is mandatory.[11] *Department of Transportation, Bureau of Driver Licensing v. Claypool*, 152 Pa.Cmwlth. 332, 618 A.2d 1231 (1992). It has long been settled that "[t]he true test [to determine] whether a statute is mandatory or not depends on whether the thing directed to be done is of the essence of the thing required." *Deibert*, 291 Pa. at 554, 140 A. at 517. Given the multitude of arrangements which must be completed before a charter school can open its doors for the school year, the legislature apparently appreciated that timeliness was an important element in assuring the fairness of the charter school application and review process. This is

---

tion 704 of the Administrative Agency law, 2 Pa.C.S. § 704; *Souderton Area School District v. Souderton Charter School Collaborative*, 764 A.2d 688 (Pa.Cmwlth.2000).

**10.** It is not disputed that the District Board took some action on Independence's charter school application; the District Board held a public hearing, reviewed the application, served and answered supplemental questions and received additional documents. However, there also is no dispute that the District Board only made its decision to deny the application after the statutory time period for such decision had expired. Nevertheless, relying on *Philadelphia Gas Works ex rel. City of Philadelphia v. Commonwealth*, 741 A.2d 841 (Pa.Cmwlth.1999), and *West Penn Power Co. v. Pennsylvania Public Utility Commission*,

104 Pa.Cmwlth. 21, 521 A.2d 75 (1987), the School District contends that, because the statute is merely directory as to time, the District Board's decision is valid even though occurring subsequent to the prescribed period for performance.

**11.** Both the School District and the CAB maintain that section 1717–A(e)(1) of the CSL is merely directory based on the absence of negative words that would prohibit a local school board from taking action after the seventy-fifth day. Apparently, they choose to ignore the fact that the statute specifically requires a local board to act on a charter application *"not later than"* seventy-five days after the first public hearing on the application.

evident from the legislature's inclusion of time limitations at every stage of these proceedings under the CSL.[12] Thus, the essence of the thing to be accomplished by the CSL is the prompt adjudication of charter school applications.[13] It is with this in mind that we recently considered a time limitation imposed under the CSL and held:

> The [CSL] emphasizes that time is of the essence and directs the local school boards and the [CAB] to quickly resolve the issue of whether to grant or deny an institution[']s charter school application. Thus, we conclude that the legislature's use of the word "shall" in Section 1717–A(i)(8) … is mandatory, requiring the [CAB] to issue its written decision and order within 60 days of its final hearing on an application.

*Shenango Valley Regional Charter School v. Hermitage School District,* 756 A.2d 1191, 1194 (Pa.Cmwlth.2000). Having recognized that the time restrictions applicable to the CAB in section 1717–A(i)(8) are mandatory because time is of the essence, we certainly can infer that analogous time restrictions placed upon the local school board in section 1717–A(e)(1) also are mandatory.[14]

**12.** *See* sections 1717–A(c), (d), (e)(1), (f), (g), (h), (i)(2), (i)(5), (i)(7), (i)(8) and (i)(9) of the CSL, 24 P.S. §§ 17–1717–A(c), (d), (e)(1), (f), (g), (h), (i)(2), (i)(5), (i)(7), (i)(8) and (i)(9).

**13.** When a local school board considers charter school applications, it acts in an adjudicatory capacity. We recognize our prior holdings that statutes which seek to impose time limitations on adjudicatory tribunals are directory only. *See e.g., Snyder v. State Ethics Commission,* 686 A.2d 843 (Pa.Cmwlth.1996); *West Penn Power.* However, we do not believe these cases require us to hold that the time constraints of section 1717–A(e)(1) are merely directory; indeed, if we consider the rationale employed in these cases in the context of the CSL, we are led to a contrary determination.

In both *Snyder* and *West Penn Power,* we made special note of the fact that it was the adjudicatory body, not the litigants, which failed to comply with the time provisions and that the effect of construing the statute as mandatory would be to punish at least one of the litigants for the actions of the adjudicator. However, in the case of a charter school application, one of the "litigants," i.e., the School District, also is the titular adjudicator. As we have noted, local school boards have a significant interest in whether school charters are granted and, in fact, the legislature recognized that local boards have an inherent bias against charter schools. *See West Chester Area School District v. Collegium Charter School,* 760 A.2d 452 (Pa.Cmwlth.2000). Thus, applying the rationale of *Snyder* and *West Penn Power,* we must require local boards to adhere strictly to the statutory time frames because construing the statute as directory would permit local boards, acting as adjudicator, to delay decisions on charter applications to the detriment of one of the litigants—the charter applicant. It is to prevent this result that the legislature provides a remedy to an applicant that believes itself prejudiced by a local board's dilatory decision making; the applicant may present its charter application to a neutral adjudicator, the CAB, which then will grant or deny the charter based upon the criteria specified in the CSL. 24 P.S. § 17–1717–A(g). In contrast, the School District's directory interpretation would effectively nullify or render meaningless the clear provisions of section 1717–A(g) by allowing a local board, solely at its option, to void an applicant's appeal under that section of the CSL. Such a construction would violate sections 1921(a) and 1922(2) of the Statutory Construction Act, 1 Pa.C.S. §§ 1921(a) and 1922(2), which strive to give effect to all the provisions of a statute and which presume that this is what the legislature intends.

**14.** Indeed, it would be incongruous if the legislature intended to impose more stringent time restrictions on the CAB, a neutral fact-finder, than on the school districts, which are often biased against charter schools. *See Collegium.*

The School District maintains that by holding the time limitations of the CSL to be mandatory, we must necessarily conclude that any action by a local school board, even the

■ Although we agree with Independence that the time limitation imposed by section 1717–A(e)(1) of the CSL is mandatory, our result here in no way depends on this determination.[15] The School District concedes that the District Board voted to deny Independence's application after the seventy-five-day time period expired and after Independence took a timely appeal to the CAB under section 1717–A(g) of the CSL. Nonetheless, the School District maintains that the CAB was obliged to relinquish jurisdiction and credit the District Board's charter application denial.

The School District's position simply cannot be reconciled with the unambiguous language of section 1717–A(g) of the CSL, which allows a charter applicant to take an immediate appeal to the CAB if the local board fails, for whatever reason,[16] to "grant or deny the application for a charter school within the time periods specified...." Further, for the CAB to relinquish jurisdiction would be contrary to the general practice that, once an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the

grant of a charter application, automatically is void once the time periods of sections 1717–A(d), (e) and (f) lapse. However, we need not go this far. It is clear that, should the local board fail to take timely action, section 1717–A(g) permits, but does not require, an applicant to appeal to the original jurisdiction of the CAB. Recognizing that a charter applicant has this choice under section 1717–A(g), the CAB held that, as long as a charter applicant takes an appeal to the CAB after the expiration of the seventy-five-day period has run, *and before the school district has acted*, the appeal is valid. However, we need not decide this particular question because, in this case, Independence does not contend, nor need it contend, that the School District was divested of the power to hold a vote, however dilatory, on the applications of those who did not avail themselves of the right to appeal. As explained, an appeal under section 1717–A(g) does not depend on proving that the seventy-five-day period automatically deprives the school district of anything. It does, however, automatically trigger a right to appeal in the applicant. If an applicant files an appeal under this section, exclusive jurisdiction vests with the CAB and any subsequent actions by the local board with respect to that applicant are null and void.

15. The School District bases its argument on the premise that the time limitations in the CSL are merely directory, and, thus, Independence has no basis to appeal the District Board's failure to act within those prescribed periods. However, even assuming the accuracy of the School District's directory interpretation, we cannot accept the conclusion drawn from that premise. In fact, it makes no difference whether the word "shall" in section 1717–A(e)(1) is directory or mandatory because Independence is appealing under section 1717–A(g). The CSL does not impose a particular penalty on a local board that fails to take timely action on a charter application, and the CSL does not include language that would deem an application to be approved when the local board fails to comply with the provided time periods. However, the CSL is specific and explicit as to the rights of applicants under these circumstances. Regardless of whether a local board's failure to act within the seventy-five-day statutory period is reasonable or inexcusable, charter school applicants are permitted to immediately file an appeal to the CAB; section 1717–A(g) is unambiguous in this regard. Thus, when the District Board failed to take action on the Independence application within seventy-five days, this triggered Independence's right to appeal and thereby confer jurisdiction over the application to the CAB.

16. Although the School District attempts to justify the District Board's failure to act within the statutorily prescribed period set forth in section 1717–A(e)(1), the reason for the lapse is irrelevant for purposes of an applicant's appeal under section 1717–A(g) of the CSL. In that section, the legislature has determined that the right to appeal a delay is triggered immediately seventy-five days after the first public hearing on the application. Thus, we need not consider whether the explanation offered by the School District is adequate to excuse the noncompliance.

matter. *See* Pa. R.A.P. 1701.[17] Thus, when Independence filed its appeal with the CAB, the District Board was divested of jurisdiction, nullifying its belated vote on Independence's charter application. Accordingly, the CAB correctly refused to relinquish its own jurisdiction merely because the District Board finally acted on the charter application after the expiration of the statutory time period.

Faced with this unambiguous statutory language, the School District devises an unsupported argument that, even when an applicant properly appeals to the CAB under section 1717–A(g) of the CSL, this means only that, for an indeterminate amount of time, the local board and the CAB have "concurrent" jurisdiction to grant or deny a charter application.[18] (*See* School District's brief at 12.) We flatly reject this argument because, aside from its lack of any support in the text of the statute, such an interpretation runs counter to the intent of the legislature. As the CAB recognized, to rewrite the CSL to include a period of indeterminate length during which a local school board and the CAB both are obliged to consider the merits of a charter application would create a "race" between the School District and the CAB, making the entity that acted first the deciding entity, a situation that does not comport with either the intent or the spirit of the CSL. (CAB's 5/31/00 op. at 5, n. 3.)

Based on its interpretation of the CSL, the CAB determined that Independence's February 29, 2000 appeal, filed with the CAB pursuant to section 1717–A(g) of the CSL, divested the District Board of jurisdiction and, thus, rendered void the District Board's March 13, 2000 vote denying Independence's charter application. The CAB did not err in this determination. It is a well-settled tenet that an agency interpreting its governing statute and regulations is entitled to great deference, *see Trakes v. Public School Employees' Retirement System,* 768 A.2d 357 (Pa.Cmwlth. 2001); *Collegium.* In this case, in addition to acknowledging the considerable deference we owe to the CAB's interpretation, we also conclude that it represents the better view. Indeed, for the CAB to dismiss Independence's appeal once it had been validly filed would violate both the plain wording of, and the legislative intent behind, the CSL.

■ After ruling on the jurisdictional question in its May 31, 2000 opinion and order, the CAB considered the merits of Independence's appeal and entered a second order, dated July 28, 2000. By a vote of six to nothing, the CAB granted Independence's appeal and directed the School District to sign Independence's charter. In an extremely brief argument, the

---

17. The School District argues that Pa. R.A.P. 1701 is inapposite because an "appeal" to the CAB under section 1717–A(g) seeks to invoke the CAB's original jurisdiction; thus, it merely "represents a reaching out to an agency of coordinate jurisdiction" rather than a request to a higher tribunal for review. (School District's brief at 13.) This argument is contradicted by the plain language of section 1717–A(g) of the CSL which, in cases where the local board fails to timely act, explicitly permits the applicant to file its application with the CAB *as an appeal.* Clearly, section 1717–A(g) does not give the CAB jurisdiction "coordinate" with the local school board for char-

ter approval; rather, it is the agency to which the charter applicant may turn for relief from a school district's failure to take timely action on the application. Once an applicant chooses to avail itself of this remedy, the local board cannot continue to subject an applicant involuntarily to its jurisdiction.

18. Interestingly, this argument contradicts the School District's own understanding that "original jurisdiction cannot lie in two tribunals simultaneously." (School District's brief at 12.)

School District challenges that ruling, claiming that it is unsupported by the record.[19] Specifically, the School District contends that the CAB committed reversible error by granting Independence's charter in the face of insubstantial evidence of the availability of a facility, a well-developed curriculum and instructional program, and an adequate process for assuring student performance and school accountability. We disagree.

In its July 28, 2000 opinion, the CAB made findings based on the record, identifying the pages in the record where support for each finding could be found. Based on these findings, the CAB conclud-

ed that Independence met all the requirements in section 1717–A(e)(2) of the CSL, which sets forth the criteria to be used in evaluating a charter school application.[20] The CAB considered each factor in turn, again making specific reference to those portions of the record relied upon. (*See generally,* CAB opinion of July 28, 2000.) Our own review of the record confirms that it fully supports the CAB's findings and conclusions.[21]

Accordingly, we affirm the May 31, 2000 order of the CAB, which rejected the School District's challenge to the CAB's jurisdiction, and we affirm the July 28, 2000 order of the CAB, which granted

---

**19.** The School District devotes less than a page of its brief to the argument that the CAB erred in granting a school charter to Independence. Moreover, in that argument, the School District does not ever address the findings of fact made by the CAB or challenge the sufficiency of the evidence supporting those findings; instead, the School District merely identifies a few isolated pages from the record that it contends support a result different from that reached by the CAB.

**20.** Section 1717–A(e)(2) of the CSL provides:

> A charter school application submitted under this article shall be evaluated ... based on criteria including, but not limited to, the following:
> (i) The demonstrated, sustainable support for the charter school plan by teachers, parents, other community members and students, including comments received at the public hearing held under subsection (d).
> (ii) The capability of the charter school applicant, in terms of supporting and planning, to provide comprehensive learning experiences to students pursuant to the adopted charter.
> (iii) The extent to which the application considers the information requested in section 1719–A and conforms to the legislative intent outlined in section 1702–A.
> (iv) The extent to which the charter school may serve as a model for other public schools.

24 P.S. § 1717–A(e)(2).

**21.** In addition, the record contains evidence to adequately address the School District's specific allegations of error. First, regarding the School District's claim that Independence had not identified a site for the school, the record clearly reflects otherwise. Independence identified a suitable facility to locate the school and informed the School District of that fact by a January 31, 2000 letter, in which Independence stated: "the Board should be aware that we have very recently identified a site for the proposed school which is not only currently available, but also ideal in terms of location, cost and the founders' vision." (R.R. at 231a; CAB's Findings of Fact, Nos. 13, 39–40.) In addition, as part of its testimony before the CAB, Independence stated that it had secured a commitment of nearly one million dollars to build a new school building in Philadelphia to house the school. (R.R. at 478a; CAB's Findings of Fact, No. 40.)

Second, as to the charges that Independence did not demonstrate its ability to provide a well-developed instructional program or assure student performance, the record contains abundant evidence to the contrary. (*See, e.g.,* Independence Charter School Application, R.R. at 57a–77a, 146a–53a; Independence's Response to Supplemental Questions, R.R. at 164a–70a; Transcript of the Public Hearing of the District Board on the Independence application, R.R. at 183a–94a, 201a–02a, 214a–22a; Testimony before the CAB, R.R. at 475a–77a; *see also* CAB's Findings of Fact, Nos. 20–25.)

Independence's charter application and directed the School District to sign Independence's public school charter.

*ORDER*

AND NOW, this 3rd day of May, 2001, the order of the State Charter School Appeal Board, dated July 28, 2000, is hereby affirmed.