**Joyce BRACKBILL and Mary Fuhrman, Petitioners,**

v.

**RON BROWN CHARTER SCHOOL, Respondent.**

**Harrisburg School District, Petitioner,**

v.

**Ronald H. Brown Charter School, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2000.

Decided May 23, 2001.

William R. Lloyd, Jr., Somerset, for petitioners.

Philip J. Murren, Camp Hill, for respondent.

Before COLINS, Judge, LEADBETTER, Judge and LEDERER, Senior Judge.

LEADBETTER, Judge.

Petitioners Joyce Brackbill and Mary Fuhrman (together, taxpayers) and Petitioner Harrisburg School District (School District) appeal from the December 2, 1999 order of the State Charter School Appeal Board (CAB) which affirmed the Ronald H. Brown Charter School's (Charter School) appeal from the School District's failure to act and directed the School District to grant the Charter School's charter application and sign its charter. Additionally, taxpayers appeal the CAB's denial of their petition to intervene.

On November 15, 1997, the Mosaica Charter School of Harrisburg submitted a charter school application (original application) to the Harrisburg School District's Board of Directors (District Board) requesting a five-year charter pursuant to the Charter School Law (CSL).[1] On December 22, 1997, pursuant to Section 1717–A of the CSL, 24 P.S. § 17–1717–A, the District Board held a public hearing on the original application. Over the next several months, the original application was amended to change the name of the proposed charter school to "Ronald H. Brown Charter School." During that period, representatives of the Charter School presented the District Board with additional answers to questions raised in the public hearing, as well as the Charter School's by-laws and a management agreement between the Charter School and Mosaica Education, Inc. (Mosaica).

On March 7, 1998, the District Board convened a special meeting to consider the original application. The application failed when separate motions to approve and to deny it failed to garner a majority.[2] Despite denying the original application, the District Board failed to send the Charter School written notice of its action, including the reasons for the denial and a description of the deficiencies of the original application.[3]

Pursuant to Section 1717–A(f) of the CSL, 24 P.S. § 17–1717–A(f), the Charter School revised its application and resubmitted it to the District Board on May 26,

---

1. Act of March 10, 1949, P.L. 30, added by the Act of June 19, 1997, P.L. 225, *as amended*, 24 P.S. §§ 17–1701–A to 17–1732–A.

2. Section 1717–A(e)(4) of the CSL, 24 P.S. § 17–1717–A(e)(4), provides that "[a] charter application shall be deemed approved by the local board of school directors of a school district upon the affirmative vote by a majority of all the directors."

3. A district board must provide written notice of its action to the applicant. If the board denies the application, it must state in the written notice the reasons for the denial, including a description of the deficiencies of the application. Section 1717–A(e)(5) of the CSL, 24 P.S. § 17–1717–A(e)(5).

1998. On July 1, 1999, after the District Board failed to take any action on the revised application within the required period, the Charter School appealed from the District Board's failure to act under Section 1717–A(g) of the CSL, 24 P.S. § 17–1717–A(g). On July 30, 1999, the CAB held a public hearing to set forth the certified record. At the hearing, the Charter School made a presentation supporting its application, including comments from Michael Connelly, Mosaica's President and Chief Executive Officer. Despite receiving notice of the appeal hearing, the School District failed to send counsel. On September 15, 1999, the CAB held a second meeting, at which the Charter School presented exhibits and testimony from several members of the school's Board of Trustees, other members of the community, and an employee of Mosaica. The School District was represented at the second meeting and cross-examined several of the Charter School's witnesses.

On September 13, 1999, taxpayers filed their petition to intervene in the appeal, asserting standing as taxpayers of the Harrisburg School District. The CAB voted twice to deny their petition and ordered the petition denied in its December 2, 1999 order.

Thereafter, the CAB issued its decision and order affirming the Charter School's appeal and directing the School District to grant the revised application and sign the Charter School's charter. When the School District failed to grant the application and sign the charter within ten days of notice of the CAB's decision, the charter was deemed approved and signed by the chairman of the CAB.[4] The School District and taxpayers filed separate appeals from the CAB's order, which this court consolidated *sua sponte.* We now consider the various issues raised within.[5]

The School District first argues that the Charter School's appeal was not properly before the CAB. According to the School District, the District Board failed to act because it reviewed the revised application and determined that it was identical to the original application, containing the same deficiencies which resulted in the earlier denial. The School District contends that the revised application was not revised within the meaning of Section 1717–A(f), and therefore, that the District Board was not required to take any action. Thus, the School District argues that no appeal from the District Board's failure to act should

---

4. Section 1718–A(i)(9) of the CSL, 24 P.S. § 17–1717–A(i)(9), provides as follows:

> A decision of the appeal board to reverse the decision of the local board of directors shall serve as a requirement for the local board of directors of a school district or school districts, as appropriate, to grant the application and sign the written charter of the charter school as provided for in section 1720–A. Should the local board of directors fail to grant the application and sign the charter within ten (10) days of notice of the reversal of the decision of the local board of directors, the charter shall be deemed approved and shall be signed by the chairman of the appeal board.

5. Because the CAB is the administrative agency charged with exclusive review of an appeal

of a local school board decision not to grant a charter application, Section 1717–A(h), (i)(1) of the CSL, 24 P.S. § 17–1717–A(h), (i)(1), this court's scope of review is appellate. Section 1717–A(i)(10) of the CSL, 24 P.S. § 17–1717–A(i)(10). Therefore, we shall affirm the CAB's determination unless this court determines that the adjudication is in violation of constitutional rights, or is not in accordance with the law, or is not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *West Chester Area Sch. Dist. v. Collegium Charter Sch.,* 760 A.2d 452 (Pa.Cmwlth.2000) (citing *Shenango Valley Reg'l Charter Sch. v. Hermitage Sch. Dist.,* 756 A.2d 1191 (Pa.Cmwlth.2000)).

have been allowed under Section 1717–A(g) because the District Board was under no obligation to act. Instead, the School District argues that the Charter School should only have been permitted to appeal the denial of the original application subject to the petition requirements of Section 1717–A(i), 24 P.S. § 17–1717–A(i). We disagree.

■ If the District Board deemed the changes in the revised application to be insufficient, the proper procedure would have been for the board to deny the application. We recently addressed the mandatory nature of the procedural requirements of the CSL in *Shenango Valley Regional Charter School v. Hermitage School District*, 756 A.2d 1191 (Pa.Cmwlth.2000). In *Shenango*, a charter school applicant appealed from an order of the CAB, arguing that the board's decision to deny its appeal was untimely. We affirmed, finding that the CAB had complied with Section 1717–A(i)(8), which requires the CAB to issue a decision on an appeal no later than 60 days after meeting to review the certified record. In so finding, we stated as follows:

> The statute emphasizes that time is of the essence and directs the local school boards and the Board to quickly resolve the issue of whether to grant or deny an institution[']s charter school application.

Thus we conclude that the legislature's use of the word "shall" in Section 1717–A(i)(8) of the Charter School Law, 24 P.S. § 17–1717–A(i)(8) is mandatory, requiring the Board to issue its written decision and order within 60 days of its final hearing on an application.

*Shenango*, 756 A.2d at 1194.

Section 1717–A(f) provides that "[t]he [local school] board *shall* consider the revised and resubmitted application at the first board meeting occurring at least forty-five (45) days after receipt of the revised application by the board." 24 P.S. § 17–1717–A(f) (emphasis supplied). The CSL does not specify the degree to which an application must be revised before a local school board is obligated to reconsider it. Nor does the CSL authorize a district board to make an informal determination of what applications it will decide upon or excuse a district board from taking timely action on properly submitted applications it finds wanting. Given the mandatory nature of a district board's responsibility to provide timely resolution to applications, it is clear that the District Board was required to take action on the Charter School's application. We therefore conclude that the CAB did not err in hearing the Charter School's appeal from the District Board's failure to act.[6]

---

6. We note that the School District's argument proceeds from a factually inaccurate premise, that the revised application was identical to the original application. As the Charter School points out, several items from the original application were changed in the revised application, including the contact person for the school, the school calendar, the number of instructional days, the schedule for the school day, the proposed location of the facility, the lists of and resumes for the founding coalition and trustees, the listed management and curriculum design teams, the number of trustees on the Charter School's Board. Additionally, several changes were made to the school's policies, including the vesting of more authority in the principal of the school,

the removal of language making the principal a liaison with Mosaica, an increase in the principal's responsibilities to the board of trustees, a more detailed description of the role of the school's trustees, an increase in the proposed budget for facilities improvements, additional details regarding its admissions policies, updated information regarding the school's recruiting and marketing plan, revisions to the school's employee retirement and health insurance benefits, a requirement that the school seek criminal history records for potential faculty members, the addition of due process requirements to the school's suspension and expulsion policies, and the coordina-

■ The School District next argues that the CAB erred in granting the revised application because of the relationship between the Charter School and Mosaica, a for-profit company. Specifically, the School District argues that the management agreement included in the revised application vests control of the Charter School in Mosaica, and not the Charter School's Board of Trustees. According to the School District, this control by a for-profit corporation would violate § 1720–A of the CSL, 24 P.S. § 17–1720–A, which provides that a charter may only be granted to a school organized as a public, non-profit corporation.

■ This court recently addressed this issue in *West Chester Area School District v. Collegium Charter School,* 760 A.2d 452 (Pa.Cmwlth.2000), which involved another school managed by Mosaica under a contract similar to the one in the instant case. In *Collegium,* the petitioner, a school district, appealed from the order of the CAB, which had reversed the school district's decision to deny the school's charter application. This court set forth the extent of involvement that for-profit entities may have in the formation and functioning of a charter school under the CSL:

> The CSL provides that a charter may be *granted* only for a school organized as a public, non-profit corporation; charters may not be granted to any for-profit entity. Yet, there is no question that the CSL permits a charter school to be *established* by "any corporation," even if that corporation is a for-profit entity. Therefore, as conceded by Petitioners, Mosaica was legally eligible to complete and submit the charter Application for Collegium. Clearly, however, the legislature did not want to entrust the management and operation of the charter school itself to entities seeking

to make money from the school's management and operation; rather, that power is granted to the charter school's board of trustees who, as public officials, have a single purpose to promote the interests of pupils. To this end, section 1716–A(a) of the CSL vests the charter school's board of trustees with the "authority to decide matters related to the operation of the school, including, but not limited to, budgeting, curriculum, and operating procedures, subject to the school's charter." The board of trustees also determines the level of compensation and all terms and conditions of staff employment. However, the CSL does not prohibit charter schools from contracting out certain management and administrative responsibilities to a for-profit corporation. Rather, the CSL grants charter schools all powers necessary or desirable for carrying out its charter, including, but not limited to, the power to acquire real property by purchase or lease and the power to make contracts or leases for the procurement of services, equipment and supplies. Thus, the CAB properly concluded,

> nothing in the [CSL] prohibits the involvement of for-profit entities in the establishment and operation of a charter school, so long as the school itself is not for-profit, the charter school's trustees have real and substantial authority and responsibility for the educational decisions, and the teachers are employees of the charter school itself.

*Id.* at 468 (citations and footnotes deleted).

The School District raises concerns identical to those raised by the school district in *Collegium.* As in *Collegium,* we find nothing in the record to indicate that the arrangement between Mosaica and the

tion of student transportation schedules with    those of the School District.

charter school would deprive the school's trustees of ultimate control of the charter school, and nothing in the CSL to prevent a for-profit entity from assuming the role Mosaica has taken.

Like the school in *Collegium*, the Charter School's articles of incorporation state that the school is organized as a non-profit corporation under Pennsylvania law. The Charter School's bylaws and the revised application both state that the Board of Trustees has full authority to operate the school, including determining general, academic, financial, personnel, and other policies, as outlined in the CSL. Additionally, the agreement makes clear that the Board of Trustees is independent of Mosaica and that Mosaica can exercise no authority which may not be delegated under the School Code and other applicable laws and resolutions. There is nothing in the record to indicate that any member of the board is employed by Mosaica or has any financial interest in the company.

The School District complains that major decisions, including the decision to contract with Mosaica, were made and included in the revised application before the board of trustees was selected. This argument, too, was fully considered and rejected in *Collegium*. *Id.* at 469. Because the facts do not support the School District's argument that the Charter School is not an independent, non-profit school, the CAB did not err in concluding that the arrangement between Mosaica and the Charter School is permitted by the CSL.

■ The School District next argues that the CAB erred in finding that the Charter School demonstrated sustainable community support. The CSL provides that an application must be evaluated based on criteria including "[t]he demonstrated, sustainable support for the charter school plan by teachers, parents, other community members and students." Sec-tion 1717–A(e)(2)(i) of the CSL, 24 P.S. § 17–1717–A(e)(2)(i). The School District complains that only two of the witnesses who testified for the Charter School at the September 15, 1999 hearing were unconnected to the Charter School or Mosaica. However, as the CAB pointed out, nothing in the CSL prohibits members of the Board of Directors of a proposed charter school from testifying. As the board members who testified are either parents, teachers, or other members of the community, we find that their testimony supporting the charter school plan was properly relied upon by the CAB. The School District also complains that the CAB erred in admitting petitions supporting the Charter School signed by members of the community because the petitions were not verified. However, once again, there is nothing in the CSL preventing an applicant from establishing community support through the use of unverified petitions.

The School District next complains that the charter was granted despite the CAB's finding that there was no evidence in the record to indicate support of the Charter School from teachers. The School District argues that the CAB's interpretation of the CSL, which excuses a failure to show strong support from one group listed in Section 1717–A(e)(2)(i) if a reasonable degree of support is shown from the "aggregate" of the groups, is contrary to the CSL. The School District argues instead that the CSL expressly requires support from teachers. Further, the School District argues that the CAB's holding that "failure to demonstrate strong support in any one category is not necessarily fatal" requires a showing of at least some support in each category.

■ Since review of this issue turns on statutory construction, we look to the

CAB's interpretation for guidance.[7] The CAB interpreted Section 1717–A(e)(2)(i) to mean that "[t]he indicia of demonstrated, sustainable support is to be measured in the aggregate and not by individual categories from which that support is to be measured" and concluded that "[f]ailure to demonstrate strong support in any one category is not necessarily fatal to charter school application." We find the CAB's construction of Section 1717–A(e)(2)(i) to be reasonable. The text of the statute, making the "demonstrated, sustainable support…by teachers, parents, other community members and students" one of several nonexclusive "criteria," suggests a less rigid interpretation than that urged by the School District. In particular, the insertion of the term "other community members" makes clear that the emphasis of Section 1717–A(e)(2)(i) is on the applicant showing that the charter school enjoys reasonably sufficient support from the community, not showing some minimum level of support from each of the more discrete groups listed.

■ We further find that the CAB was incorrect in its determination that the Charter School failed to show any support from teachers. The Charter School clearly did present evidence of support from teachers. Among those who testified in support of the Charter School were two members of the school's board of trustees, Edmund Dudley, a teacher retired from full-time service in the Harrisburg School District and a current substitute teacher, and David Kirkpatrick, a retired public school teacher and former president of the PSEA. Other teachers have served on the Charter School's board in the past, including Dorothy Marie Winfield–Tate, a former public school teacher; Mary E. Lykens, a private school teacher; Lisa M. Tait,

an adjunct professor at Coppin State College and a program director at the Milton Hershey School; and Dr. Karen Streeter, a school psychologist. We find that the testimony of Mr. Dudley and Kirkpatrick, and the support of Ms. Winfield Tate, Ms. Lykens, Ms. Tate, and Dr. Streeter, sufficiently establish that the Charter School enjoys support from teachers. In light of the strong community support demonstrated by the petitions and the other testimony presented at the CAB's September 15, 1999 hearing, we conclude that the CAB did not err in finding that the Charter School had demonstrated sufficient community support.

■ Next, the School District argues that the CAB erred in granting the charter because the proposed facilities listed in the revised application are no longer available. The CAB found that the Charter School's revised application satisfied the facility requirement of Section 1719–A(11). However, the CAB also found that the proposed site and an alternative site listed in the revised application were no longer available to the Charter School. To remedy this deficiency, the CAB required that the Charter School provide the School District and CAB with information regarding the facility to be used prior to the opening of the Charter School.

The School District argues that the CAB's action is contrary to public policy in that it would allow a charter school applicant to wait until after an application is approved before proposing a location. This, the School District argues, would circumvent the requirements of the CSL and undermine the ability of local school boards to assess a charter school applicant. Finally, the School District argues that the CAB's decision does not contemplate a

---

7. The CAB's interpretation of its governing statute is entitled to great deference. *School*

*District of Philadelphia v. Independence Charter School,* 774 A.2d 798 (Pa.Cmwlth.2001).

remedy in the event that the building chosen after the granting of a charter is unsuitable. We find that these arguments lack merit.

■ What the School District fails to recognize is that any loss of authority to react in the first instance to the proposed facility is a deprivation of its own making. The Charter School properly listed two facilities in its application in compliance with the statutory requirement. The School District, through the delay caused by its inaction, appears to have caused the Charter School's loss of rights in these proposed facilities. It would be unreasonable to expect an applicant to maintain rights in the precise vacant property listed in an application for the period which it has taken for the revised application to wend its way from the District Board to the CAB to this court. Moreover, by failing to act on the revised application, the School District abdicated to the CAB the authority to review all of the relevant criteria. We believe that the CAB appropriately weighed this factor in its determination to grant the charter. Although an applicant must include a proposed facility in its application, there is no requirement that the facility be under a contractual obligation before the charter is granted. On the contrary, the Section 1717–A(e)(2) CSL simply provides that:

> A charter school application submitted under this article shall be evaluated...based on criteria including, but not limited to, the following:
>
> \* \* \*

(iii) The extent to which the application considers the information requested in section 1719–A. . . .

24 P.S. § 17–1717–A(e)(2). The CAB found that the Charter School had met the statutory requirements and thus had appropriately considered the facility necessary for operation of its school.[8] Therefore, we believe the CAB acted within its discretion in granting the charter subject to the requirement that the Charter School present information regarding its facility prior to the opening of the school.

Finally, we reach the issue of the CAB's denial of taxpayers' petition to intervene. Our recent decision in *Collegium* addressed the arguments raised by taxpayers and is controlling. We find the CAB's decision to deny taxpayers' petition to intervene to be consistent with the principles enunciated in *Collegium*.

For all the foregoing reasons, we affirm.

### ORDER

AND NOW, this 23rd day of May, 2001, the order of the State Charter School Appeal Board, dated December 2, 1999, affirming the Ronald H. Brown Charter School's appeal, directing the Harrisburg School District to grant and sign the school's charter, and denying Joyce Brackbill and Mary Fuhrman's petition to intervene is hereby affirmed.

■

8. Further, we believe that implicit in the CAB's grant of the charter is a requirement that the Charter School obtain a suitable facility, at least generally similar to those proposed in its application, and that failure to do so would be grounds for termination of the charter under Section 1729–A(a)(1) of the CSL, 24 P.S. § 17–1729–A(a)(1).