CARBONDALE AREA SCHOOL DISTRICT, Petitioner,

v.

FELL CHARTER SCHOOL, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 2, 2003.
Decided July 23, 2003.

James J. Walker, Carbondale, for petitioner.

Robert W. O'Donnell, Philadelphia, for respondent.

BEFORE: McGINLEY, Judge, COHN, Judge, MIRARCHI, JR., Senior Judge.

OPINION BY Judge COHN.

The Carbondale Area School District (District) petitions for review of an order of the State Charter School Appeal Board (CAB), reversing the decision of the District to deny the application for a charter filed by Fell Charter School (Fell) and directing the District to grant Fell's application for a charter and sign the charter pursuant to Section 1720-A of the Charter School Law (CSL), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 17–1720-A, added by Section 1 of the Act of June 19, 1997, P.L. 225. We affirm.

The following are the relevant facts of the case. In April 2000, the District decided to close the Fell Elementary School and consolidate all of the District's elementary students at an expanded elementary school building in Carbondale, Pennsylvania. Some of the residents of Fell Township opposed the loss of their own elementary school building. When these residents were unable to convince the District to renovate the school building, they decided to establish a charter school in order to maintain a school in Fell Township. After opting for a charter school, the residents entered into a management agreement with Mosaica Education, Inc. (Mosaica), a for-profit management company, to provide management services at the charter school.

Fell submitted a charter application to the District's Board of School Directors (School Board) on March 30, 2001, requesting a charter for a school to begin operating in the 2002–2003 school year. On July 9, 2001, the School Board denied the charter application and issued a written decision on September 11, 2001. Fell appealed this decision to the CAB on December 3, 2001. On April 10, 2002, the CAB sustained Fell's appeal and directed the

School Board to grant Fell's charter application and to sign Fell's charter. The CAB issued a written decision on May 2, 2002. This appeal followed.[1]

■ The District's first argument is that the CAB erred by improperly applying a *de novo* standard of review in considering and reviewing the decision of the School Board, and by erroneously substituting its own findings of fact and conclusions of law in place of the findings of fact and conclusions of law made by the School Board. We disagree.

In *West Chester Area School District v. Collegium Charter School,* 760 A.2d 452 (Pa.Cmwlth.2000), *affirmed,* 571 Pa. 503, 812 A.2d 1172 (2002), we addressed this very question and determined that under the CSL, CAB has a *de novo* standard of review. We stated:

> Subsection 1717–A(i)(6) of the CSL specifically provides:
>
>> In any appeal, the decision made by the local board of directors shall be reviewed by the appeal board on the record as certified by the local board of directors. **The appeal board shall give due consideration to the findings of the local board of directors and specifically articulate its reasons for agreeing or disagreeing with those findings in its written decision.** The appeal board shall have the discretion to allow the local board of directors and the charter school applicant to supplement the record if the supplemental information was previously unavailable.
>
> 24 P.S. § 17–1717–A(i)(6) (emphasis added.) This section explicitly directs that the CAB "specifically articulate

its reasons for agreeing or disagreeing" with the findings of the local board of directors. By giving the CAB the right to disagree with the local school board and requiring it to specifically articulate its reasons for doing so, the General Assembly has unquestionably granted the CAB the authority to substitute its own findings and independent judgment for that of the local school board. Moreover, it is significant that the statute requires the CAB to also "specifically articulate its reasons for **agreeing**" with the **findings,** as opposed to the decision, of the of the [sic] local school board. In doing so, the General Assembly clearly intended that the CAB should not limit its review simply to a determination of whether the local school board abused its discretion, i.e., whether its findings were based on substantial evidence.

This procedure is in accord with the "[m]inimum requirements of due process" which "demand that a litigant have, at some stage of a proceeding, a neutral fact-finder." *Belasco v. Board of Public Education,* 510 Pa. 504, 515, 510 A.2d 337, 343 (1986). In *Belasco,* our supreme court noted that the local school board is not "an independent and impartial adjudicator." *Id.* at 514, 510 A.2d at 342. Similarly, here, we cannot ignore the fact that local school boards have a significant interest in whether charters are granted; indeed the legislative history contains frequent references to the bias of local school boards against charter schools.... Thus, here, as in *Belasco,* there is a need for a neutral fact finder at **some stage** of the pro-

---

1. Our scope of review of an order of the CAB is limited to whether constitutional rights were violated, errors of law were committed, or the decision is not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Shenango Valley Regional Charter School v. Hermitage School District,* 756 A.2d 1191 (Pa.Cmwlth. 2000).

ceedings—one which will consider the findings made by the local school board but which will remain free to **"disagree[] with those findings"** and draw its own conclusions after "due consideration" of those findings. 24 P.S. § 17–1717–A(i)(6).

Here, also, the importance of the CAB having *de novo* review is underscored by the fact that the Commonwealth Court is limited to appellate review of the CAB's decision and may not make findings of fact. *See* 24 P.S. § 17–1717–A(i)(10). Thus, unless the CAB is empowered to be the ultimate fact finder, there would be no neutral factfinder at any stage of the proceedings, and minimum requirements of due process would not be met. *See Belasco.*

*West Chester,* 760 A.2d at 460–62 (emphasis in original) (footnotes omitted).

The District specifically argues that *de novo* review is not proper where the parties had a full opportunity to present evidence before the School Board, and where the same School Board issued a decision complete with findings of fact and conclusions of law. Rather, in such instances, the District asserts that the CAB should exercise appellate review similar to that of this Court. However, as we explained in *West Chester,* it is not the opportunity of the parties to present evidence before a local school board or the completeness of the opinion that determines the CAB's scope of review. Rather, it is the statute which provides that the CAB may agree or disagree with the findings of a local school board and, as such, the CAB is free to accept or reject those findings. Further, because due process requires a neutral factfinder at some point in the proceedings, the CAB performs that function. Consequently, we are not persuaded by the District's argument.

Next, the District argues that, even if the CAB can exercise *de novo* review, the decision of the CAB was not supported by substantial evidence. We disagree.

Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *York Terrace/Beverly Enterprises v. Workmen's Compensation Appeal Board (Lucas),* 140 Pa.Cmwlth.75, 591 A.2d 762, 764 n.5 (1991). It is irrelevant whether the record contains evidence to support findings other than those made by the factfinder; the critical inquiry is whether there is evidence to support the findings actually made. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.),* 721 A.2d 1152 (Pa.Cmwlth.1998).

Our review of the record indicates that the CAB's decision is supported by substantial evidence. The CAB conducted a thorough review of the proceedings before the School Board, and set forth the reasons for its decision based on the evidence presented. Consequently, we cannot say that its decision is not based on substantial evidence of record.

Next, the District argues that the CAB improperly allowed documents into the record at the time of oral argument. We disagree. The District contends that the CAB allowed pre-enrollment applications to be admitted into evidence during oral argument. The CAB's decision specifically addresses the issue:

[a]t the February 13, 2002 meeting of CAB, Fell requested that CAB accept the Pre-Enrollment Applications into evidence and include them in the record. CAB accepted the Pre-Enrollment Applications at that time over the objection of the [] District and took the objection under advisement.

Pursuant to the [CSL], CAB has the discretion to allow either party to sup-

plement the record if the supplemental information was previously unavailable. 24 P.S. § 17–1717–A(i)(6). Information that was previously unavailable cannot include information that could have been obtained and submitted for inclusion into the record prior to the [] district's vote. (CAB Opinion at 9.) The CAB concluded that the pre-enrollment applications were previously available during the hearings before the School Board and, in fact, were requested by it. As such, the CAB rejected the pre-enrollment applications and, instead, relied solely on the affidavit submitted by Mark Gerchman during the hearings before the School Board, which stated that 126 students were pre-enrolled. Consequently, the CAB did not err because it did not admit the pre-enrollment applications into evidence and, as a result, never considered them. However, even if it had admitted the pre-enrollment applications, it would have been harmless error because the CAB specifically stated that they were not relied upon in rendering the decision.

■ Next, the District argues that the CAB erred in finding that Fell sufficiently proved "demonstrated, sustainable support" for the charter school plan by teachers, parents, community members and students as required by Section 1717–A(e)(2)(i) of the CSL, 24 P.S. § 17–1717–A(e)(2)(i). Specifically, the District argues that the 126 pre-enrollment applications fall below the initial projected enrollment of over 200 students and, thus, indicate a loss of support. We disagree.

Section 17–1717–A(e)(2)(i) states:

(2) A charter school application submitted under this article shall be evaluated by the local board of school directors based on criteria including, but not limited to, the following:

(i) The demonstrated, sustainable support for the charter school plan by teachers, parents, other community members and students, including comments received at the public hearing held under subsection (d).

In determining whether an application has established demonstrated, sustainable support, we previously stated our agreement with the CAB that such support "is to be measured in the aggregate and not by individual categories" and concluded that "[f]ailure to demonstrate strong support in any one category is not necessarily fatal to charter school application." *Brackbill v. Ron Brown Charter School*, 777 A.2d 131, 138 (Pa.Cmwlth.2001) (quoting and approving the CAB's interpretation proffered in that case), *petition for allowance of appeal denied*, —— Pa. ——, 821 A.2d 588 (2003).

In the case *sub judice*, the CAB concluded that there was a broad level of community support. It emphasized the fact that the November 2000 meeting, at which the concept of a charter school was discussed and Mosaica was considered as a potential management company, was well-attended, with standing room only. The Petition of Support of the Fell Township Charter School included approximately 554 signatures with the majority of individuals listing a residence of Simpson or Carbondale, both of which are located in the Carbondale Area School District. Community support was demonstrated by 85 emails, and 54 letters of support from residents, businesses, and elected officials. Additionally, Fell had received donations totaling $10,025 from 81 donors, with additional pledges of $40,000 made. Several community groups gave financial support to Fell as well. The CAB observed that the fact that 126 pre-enrollment applications were submitted demonstrated a sufficient level of sustainable support. The CAB did note that Fell did not specifically show teacher support for the charter school plan; however, a member of the Fell Board testified

that three District teachers donated money anonymously to the school and that it had received an e-mail inquiring about teaching positions and expectations for teachers. In addition, one of Fell's board members, Mr. Gerchman, is currently a teacher. Therefore, the CAB concluded that, despite the limited public support of teachers to the charter school plan, Fell had established demonstrated, sustainable support in the aggregate. We agree with this conclusion.

Finally, the District argues that the CAB erred in finding and concluding that Fell's charter application satisfied the requirements of Section 1719–A of the CSL, 24 P.S. § 17–1719–A. Specifically, the District argues that Fell did not establish the proposed governance structure by providing an executed management agreement, identify the proposed location of the facility, identify the curriculum, set forth an adequate faculty and professional development plan, or detail its insurance coverage. Therefore, the District asserts that Fell did not meet its burden of establishing its capability to provide comprehensive learning experiences.

*Proposed Governance Structure*

First, the District argues that Fell never submitted an executed Management Agreement with the Application and that only a proposed Management Agreement was ever presented before the School Board. Consequently, the District asserts, the CAB was unable to ascertain the nature of the relationship between the parties without a Final Management Agreement. We disagree.

Our review of the record indicates that the full Application, dated March 29, 2001, contains an unexecuted Management Agreement. However, as counsel for Fell *pointed out in* his brief, a copy of the signature page of the Management Agree-

ment, showing the signatures of the parties, was submitted to the School Board in its post-hearing submission. (See Response to School Board, Applicant's Post Hearing Submission, Exhibit 5, Part VI.) Notwithstanding the District's assertion to the contrary, that it was never presented a copy of the executed Management Agreement, the record shows that the signature page was submitted on July 9, 2001, before the School Board rendered its decision. Because the executed Management Agreement was before the School Board and, subsequently, certified to the CAB, we find no basis for reversible error here.

■ The District also argues that the proposed Management Agreement turns over control of Fell to Mosaica, with the Board of Trustees becoming nothing more than a "rubber stamping body." Specifically, the District complains that the following duties are the responsibility of the Board of Trustees of Fell, but that the Management Agreement delegates these responsibilities to Mosaica:

(1) preparation of the annual budget,

(2) maintenance and retention of all financial and student records,

(3) recommendation and enforcement of rules, regulations, and procedures not inconsistent with the proposed Management Agreement,

(4) solicitation and receipt of grants and donations on behalf of Fell,

(5) selection, evaluation, assignment, discipline, supervision, and transferring of Fell personnel,

(6) determination of Fell's staffing level,

(7) selection and employment of the Fell principal, and

(8) providing Fell with Mosaica's copyrighted Paragon curriculum.

(District's Brief at 20–21.) We disagree with the District's contention.

Section 1719–A of the Law provides:

An application to establish a charter school shall include all of the following information:

\* \* \*

(4) The proposed governance structure of the charter school, including a description and method for the appointment or election of members of the board of trustees.

24 P.S. § 17–1719–A(4).

We addressed this same District contention in *West Chester,* which involved another charter school under contract and managed by Mosaica. This Court delineated the extent of involvement that a for-profit entity, such as Mosaica, may have in the formation and functioning of a charter school. We stated:

> The CSL provides that a charter may be *granted* only for a school organized as a public, non-profit corporation; charters may not be granted to any for-profit entity. Yet, there is no question that the CSL permits a charter school to be *established* by "any corporation," even if that corporation is a for-profit entity. Therefore, as conceded by Petitioners, Mosaica was legally eligible to complete and submit the charter Application for Collegium. Clearly, however, the legislature did not want to entrust the management and operation of the charter school itself to entities seeking to make money from the school's management and operation; rather, that power is granted to the charter school's board of trustees who, as public officials, have a single purpose to promote the interests of pupils. To this end, section 1716–A(a) of the CSL vests the charter school's board of trustees with the "authority to decide matters related to the operation of the school, including, but not limited to, budgeting, curriculum, and operating procedures, subject to the school's charter." In addition, the trustees have "the

authority to employ, discharge and contract with necessary professional and nonprofessional employees subject to the school's charter." The board of trustees also determines the level of compensation and all terms and conditions of staff employment. However, the CSL does not prohibit charter schools from contracting out certain management and administrative responsibilities to a for-profit corporation. Rather, the CSL grants charter schools all powers necessary or desirable for carrying out its charter, including, but not limited to, the power to acquire real property by purchase or lease and the power to make contracts or leases for the procurement of services, equipment and supplies. Thus, as the CAB properly concluded,

> nothing in the [CSL] prohibits the involvement of for-profit entities in the establishment and operation of a charter school, so long as the school itself is not for-profit, the charter school's trustees have real and substantial authority and responsibility for the educational decisions, and the teachers are employees of the charter school itself.

*Id.* at 468 (citations and footnotes omitted).

The District concedes that a for-profit corporation, association, or partnership may establish a charter school, so long as the charter itself is granted to a non-profit entity. 24 P.S. § 17–1703–A; Section 1717–A(a) of the CSL, 17–1717–A(a). With regard to the specific responsibilities the District alleges will be transferred to Mosaica, our review of the record reveals that nothing in the charter would prevent the Board of Trustees from exercising ultimate control of the charter school. Fell's articles of incorporation list it as a non-profit corporation in Pennsylvania. Additionally, Fell's by-laws state that the

Board of Trustees "has ultimate responsibility to determine general, academic, financial[,] personnel and related policies deemed necessary for the administration and development of the Charter School in accordance with its stated purpose and goals." (Fell Charter School, Inc., By-Laws, Section 3.6.) Further, the Management Agreement specifically provides that Fell's Board of Trustees is independent from Mosaica and that none of Mosaica's directors, officers or employees shall be members of the Board of Trustees. Because the evidence establishes that Fell is organized as an independent, non-profit school, the CAB did not err in determining that the Management Agreement between Fell and Mosaica is permitted under the Law.

### Physical Facility

■ The District contends that Fell must submit a more complete description of the proposed facility, including a written lease agreement, a capital improvement plan, or an agreement of sale for the purchase of real estate. Additionally, the District argues that Fell did not adequately address safety risks associated with the proposed facility.

The CAB, however, concluded that the type of information the District would like in the application is not required by the Law. It states: "[t]he law simply requires a general description of the facility, its address, ownership information, leasing arrangements, suitability, and safety considerations." (CAB Opinion at 22.) In rendering its decision, the CAB relies on the Charter School Application, which lists the address at 775 Main Street, Simpson, Pennsylvania, and the fact that Mosaica was negotiating to purchase a property and construct a building of approximately 40,000 square feet for additional classrooms. Additionally, the CAB relied extensively on the Memoran-

dum of Understanding between Fell and St. Basil's Orthodox Church of Simpson, Pennsylvania (the current owner of the property at 775 Main Street), which was submitted with the application. The Memorandum provides an additional description of the site, including a floor plan, and an architectural drawing. Additionally, the CAB relied on the lengthy discussion at the June 25, 2001 hearing before the School Board.

The CSL requires an applicant to provide "[a] description of and address of the physical facility in which the charter school will be located and the ownership thereof and any lease agreements." Section 1719–A(11) of the CSL, 24 P.S. § 17–1719–A(11). Further, under Section 1722–A(a) of the CLS, a charter school may be located on "space provided on a privately owned site, in a public building or in any other suitable location." 24 P.S. § 17–1722–A(a). A charter school facility must comply only with the public school regulations that concern health or safety of students. Section 1722–A(b) of the CSL, 24 P.S. § 17–1722–A(b).

We agree with the CAB that Fell complied with the requirements of the CSL. Although the additional information would be helpful in making a determination, it is not statutorily required. As we stated in *Brackbill*, "[a]lthough an applicant must include a proposed facility in its application, there is no requirement that the facility be under a contractual obligation before the charter is granted." *Id.* at 139. Additionally, the CAB concluded that safety considerations were addressed in the Memorandum of Understanding because it states that the buyer and the trustees of the charter school agree that improvements necessary to satisfy the standards of applicable building codes must be made prior to the opening of Fell. Consequently, the District's argument as to this issue is rejected.

*Curriculum*

■ The District argues that Fell has failed to provide the curriculum for grades nine and ten, and to provide detailed curriculum and objectives beyond grade six. We disagree that such information was needed at this time.

The CSL requires an applicant to provide information regarding the "mission and education goals of the charter school, the curriculum to be offered and the methods of assessing whether students are meeting educational goals." Section 1719–A(5) of the CSL, 24 P.S. § 17–1719–A(5). The CAB concluded that Fell satisfied the statutory requirement because it indicated in its Application that it will only serve kindergarten through sixth grade during the first year it enrolls students. After the first year, Fell anticipates adding an additional grade each year. Consequently, the CAB determined that only the curriculum for kindergarten through grade six was necessary at the time of the Application. Additionally, the Application indicated that Mosaica is developing the curriculum for grades nine and ten. Therefore, the CAB concluded that Fell met the statutory requirement by providing sufficiently detailed information for the kindergarten through grade six curricula, which it will need when it opens. We agree.

*Faculty and Professional Development Plan*

■ The District asserts that the CAB erred in finding that the Application contained an adequate faculty and professional development plan. We disagree.

Section 1719–A(13) of the CSL, 24 P.S. § 17–1719–A(13), requires the applicant to submit a faculty and professional development plan. The District maintains that the Application description is insufficient to satisfy this requirement. The Application states that Fell will "seek well-quali-

fied, experienced individuals" and "hire, train and strive to retain star teachers and talented leaders in educational management." (Application at 86.) The District contends that Fell has not explained how it will meet these goals when it is offering its teachers a salary of only $28,000 per year and, as such, the Application is not complete. The CAB disagreed because the Application extensively addresses staff development and professional opportunities, and provided the following examples in its opinion:

In addition to a commitment to providing intensive pre-service and in-service training, Fell indicates that it will devote 20 days the first year and 15 days each additional year to staff development. Furthermore, it will provide all teachers with training in Reading and Language Arts instruction and the use of technology. Fell also commits to providing two in-house program facilitators for continuous in-classroom teacher training. Additionally, Fell will give the teachers the opportunity to attend seminars and conferences. (Application, p. 56).

The Application also states that providing "exemplary ongoing professional development in math and science instruction and in technology integration" is a job goal. (Application, p. 103). Furthermore, Fell intends to provide in-service education customized to the population and to the curriculum. (Application, p. 105). The Application even lists a number of instructional/learning opportunities for staff participation. In addition to listing the learning opportunity, such as Creating Kindergartens where Students Can Bloom, Fell has designated the month during which this learning opportunity will occur. (Application, p. 106). On the basis of the above commitments to professional development which Fell articulates in the Application, Fell has satisfied the statutory requirement. . . .

**410**

(CAB Opinion at 25–26.) We agree with the CAB that, based on the above-quoted examples, Fell has more than amply satisfied the statutory requirement for describing faculty and professional development.

### Insurance Coverage

 The District argues that Fell did not provide enough detail in its Application regarding adequate liability and other appropriate insurance for the charter school. We disagree.

Section 1719–A(17) of the CSL, 24 P.S. § 17–1719–A(17), requires the application to indicate "[h]ow the charter school will provide adequate liability and other appropriate insurance for the charter school, its employees and the board of trustees of the charter school." The District argues that Fell should have provided insurance quotes or descriptions of insurance policies in order to comply with the statute. However, CAB disagreed and pointed out that "[o]n pages 96 and 97 of the Application, Fell provided the types and amounts of insurance coverage it intends to obtain. While Fell could have provided a more comprehensive description of its insurance coverage plans, this is not required by the law, and Fell has provided sufficient information." (CAB Opinion at 27.) Again, we agree with the CAB that there is substantial evidence to support the finding that Fell complied with this statutory requirement.

Accordingly, we affirm the order of the CAB.

### ORDER

**NOW,** July 23, 2003, the order of the State Charter School Appeal Board in the above-captioned matter is hereby affirmed.