# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joan Myers Brown Academy: A String : 
Theory Charter School, :
                   Petitioner :
  :
           v. : No. 679 C.D. 2023
  : ARGUED: April 11, 2024
School District of Philadelphia (State :
Charter School Appeal Board), :
              Respondent :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                   **FILED: July 11, 2024**

Joan Myers Brown Academy: A String Theory Charter School (JMBA) petitions this Court for review of the order of the State Charter School Appeal Board (CAB), affirming the decision of the School District of Philadelphia Board of Education (District) to deny JMBA's third application for a charter school. CAB based its decision on JMBA's purported failure to meet multiple requirements of the Charter School Law (Law),[1] including curriculum deficiencies and lack of independence, and because JMBA would not serve as a model for other public schools. Upon review, we affirm.

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, added by the Act of June 19, 1997, P.L. 225, 24 P.S. §§ 17-1701-A to 17-1732-A.

## I. Factual and Procedural Background

JMBA, a nonprofit Pennsylvania corporation, submitted its first and second charter school applications to the District in November 2018 and April 2019, respectively. Reproduced Record (R.R.) at 12a, 2234a-35a. Both applications were denied following public meetings, and appeals were not taken. *Id.*

JMBA submitted its third charter school application to the District on November 15, 2019, seeking to establish a charter school beginning with the 2020-21 school year. R.R. at 8a, 11a, 2232a, 2234a. According to the application, JMBA planned to serve 600 students in its first year in grades K-5. *Id.* at 11a, 2234a. JMBA would then add 1 grade and an additional 100 students per year for the next 4 years, ultimately serving up to 900 students in grades K-8. *Id.* JMBA would be located at 3905 Ford Road in the Wynnefield Heights section of west Philadelphia (Ford Road property). *Id.* at 12a, 2234a.

The application also provided that String Theory Schools would be the educational management organization contracted with JMBA. R.R. at 12a, 2234a. String Theory Schools operates two other charter schools in Philadelphia, those being Philadelphia Performing Arts Charter School (Philadelphia Performing Arts), which serves grades K-12, and The Philadelphia Charter School for Arts and Sciences at H.R. Edmunds (Arts and Sciences), which serves grades K-8. *Id.* at 12a, 2235a. JMBA would replicate both the contemporary dance curriculum and the core subject area curriculum in use at Philadelphia Performing Arts. *Id.* at 16a, 2236a.

Following public hearings and a review of written public comments, the District denied JMBA's application[2] and issued a lengthy decision explaining its

---

[2] Section 1717-A(e)(2) of the Law states:

**(Footnote continued on next page…)**

reasoning. R.R. at 9a, 2231a-65a. The District noted that multiple deficiencies persisted in JMBA's third application, despite JMBA having received substantive feedback after its first two applications were denied. In particular, the District found that JMBA failed to demonstrate it is prepared to offer comprehensive learning experiences to students because its proposed curriculum is not aligned with state curriculum standards in every subject and grade level to be offered in the first year of the charter, including those set forth in Chapter 4 of the Public School Code[3]

> (2) A charter school application submitted under this article shall be evaluated by the local board of school directors based on criteria, including, but not limited to, the following:
>
> (i) The demonstrated, sustainable support for the charter school plan by teachers, parents, other community members and students, including comments received at the public hearing held under subsection (d).
>
> (ii) The capability of the charter school applicant, in terms of support and planning, **to provide comprehensive learning experiences to students** pursuant to the adopted charter.
>
> (iii) The extent to which the application considers the information requested in section 1719-A and conforms to the legislative intent outlined in section 1702-A.
>
> (iv) The extent to which the charter school may serve as a model for other public schools.

24 P.S. § 17-1717-A(e)(2) (emphasis added). Moreover, Section 1719-A of the Law provides that an application to establish a charter school shall include, *inter alia*, identification of the charter applicant; the name of the proposed school; the proposed governance structure of the school; the curriculum to be offered and methods of assessing whether students are meeting educational goals; procedures which will be used regarding the suspension or expulsion of students; the financial plan for the school; and "[a] description of an address of the physical facility in which the charter school will be located and the ownership thereof and any lease arrangements." 24 P.S. § 17-1719-A.

[3] Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 – 27-2702.

regulations. *See* 22 Pa. Code § 4.12. The District specified that "non-alignment or mis-alignment continues to be evident" in multiple grade levels for certain subject areas, including Health and Physical Education, Environment and Ecology, Science, Social Studies, Career Education, and Family and Consumer Science. R.R. at 2237a-38a (listing the subject areas and grade levels that are not aligned with state curriculum standards).

In addition, the District found that JMBA would not be an independent nonprofit corporation because String Theory Schools, its management company, and numerous other related entities are all represented by the same law firm. The various clients have not signed waivers of potential conflicts of interest and the relationships and negotiations among them are not the product of arms-length transactions. R.R. at 2252a-55a. The District further found that the budget submitted by JMBA did not sufficiently address health care costs, insurance, and retirement benefits; that JMBA did not provide lease arrangements, such as proposed rent and utility costs, or indicate who would be responsible for renovations or maintenance for its proposed facility; and that JMBA's proposed procedures regarding suspension of students did not comply with state law. Given all of these deficiencies, the District concluded that JMBA did not have the capacity to serve as a model for other public schools, as required by Section 1717-A(e)(2)(iv) of the Law, 24 P.S. § 17-1717-A(e)(2)(iv). *Id.* at 2261a-62a.

JMBA subsequently appealed to CAB. After the record was closed, and following briefing and oral argument, the District filed a motion to supplement the record with information that the Ford Road property was no longer available. R.R. at 11a, 2305a-15a. The District averred that in January 2023, it learned that the Ford Road property was sold on or about June 1, 2020, and that on January 9, 2023,

4

a commercial building permit was issued so that the property could be fitted-out as a drug rehabilitation center. *Id.* at 2307a-08a. JMBA objected to the motion to supplement arguing, *inter alia*, that the information regarding the sale of the Ford Road property was a matter of public record and available to the District before the record was closed. *Id.* at 2316a-20a. JMBA subsequently filed its own motion to supplement the record with information regarding its new proposed facility location, 111 N. 49th Street (49th Street property), including a fully executed letter of intent to develop that location for its charter school. *Id.* at 11a, 2321a-23a. CAB granted both motions and then heard additional argument on the appeal based upon the supplementations.

On June 16, 2023, CAB issued its opinion and order affirming the District's decision and denying JMBA's appeal.[4] R.R. at 8a-39a. CAB found that JMBA's proposed curriculum is not adequate to offer comprehensive learning experiences to its students as required by the Law, noting this failure on its own is sufficient to deny the application. *Id.* at 32a. CAB adopted the specific findings of the District as to how JMBA's proposed curriculum for certain subject areas is not aligned with all of the Pennsylvania standards applicable to multiple grade levels, expressing concern over these "serious deficiencies in [JMBA]'s curricular materials." *Id.* at 32a; *see also id.* at 17a-18a, 34a. CAB noted that JMBA's proposed curriculum would replicate that of Philadelphia Performing Arts and Arts and Sciences, charter schools that have had mixed success. Moreover, CAB determined that JMBA's Multi-Tier System of Supports plan lacked "the necessary components and explanation to ensure that students who are not making the expected progress receive necessary supports and interventions." *Id.* at 18a, 34a.

---

[4] CAB voted three to one to deny the appeal, with the Acting Secretary of Education abstaining. R.R. at 11a, 38a.

CAB also agreed with the District that JMBA would not be an independent, nonprofit corporation because its management company (String Theory Schools) and other related entities are represented by the same law firm, which also incorporated JMBA and has authority to appoint the initial trustees. R.R. at 28a. CAB noted its concerns regarding potential conflicts of interest between the entities, including those surrounding negotiation of the support agreement for String Theory Schools to provide education management services to JMBA, the $1 million line of credit String Theory Schools would be providing to JMBA, and the possibility that the charter school's foundation may own the property JMBA utilizes. *Id.* CAB opined that, at a minimum, JMBA and String Theory Schools should have independent legal counsel to fully understand the terms of their support agreement and the legal implications of the management relationship, noting that the Law and precedent require that "management agreements must be products of arms-length negotiations between separate and independent entities." *Insight PA Cyber Charter Sch. v. Dep't of Educ.*, 162 A.3d 591, 598 (Pa. Cmwlth. 2017) (*en banc*) [citing *West Chester Area Sch. Dist. v. Collegium Charter Sch.*, 760 A.2d 452 (Pa. Cmwlth. 2000), *aff'd*, 812 A.2d 1172 (Pa. 2002)]. Because the various entities here are represented by the same legal counsel, CAB found that the negotiations and transactions among them cannot be considered arms-length. R.R. at 29a.

With respect to the location of the charter school, CAB conceded "[t]here is no requirement that the facility be under a contractual obligation before the charter is granted." R.R. at 27a [citing *Brackbill v. Ron Brown Charter Sch.*, 777 A.2d 131, 139 (Pa. Cmwlth. 2001)]. Notwithstanding, CAB lamented the fact that JMBA provided very little information regarding the 49th Street property – namely a letter of intent, the lot size, and owner – and only did so after the District raised the

6

issue of the Ford Road property being unavailable. *Id.* at 27a. As CAB explained, "despite having the opportunity to address any concerns this Board might have regarding the suitability of [the 49th Street property], [JMBA] has elected to limit that supplementation to a letter of intent instead of presenting additional evidence regarding the suitability of the proposed location." *Id.* CAB's opinion, however, does not specify any concerns that it had with the suitability of the new location.

For all of these reasons, in particular the numerous curriculum deficiencies, CAB found that JMBA would not be a good model for other public schools. *Id.* at 36a. JMBA's appeal to this Court followed.

## II. Issues

Regarding the curriculum plan, JMBA claims[5] that CAB erred in upholding alleged curriculum deficiencies that lacked specificity and merely referenced broad categories of academic standards when Section 1717-A(e)(5) of the Law, 24 P.S. § 17-1717-A(e)(5), requires that any such deficiencies be "clearly stated" in the District's adjudication.[6] Moreover, CAB ignored JMBA's direct rebuttal of the substantive curriculum deficiencies raised by the District, and failed to specifically articulate its reasons for agreeing with the District's findings.[7] JMBA also argues that a charter school applicant need not "exhaustively describe every

---

[5] We have reordered JMBA's arguments for ease of discussion.

[6] In its brief, JMBA misidentifies the relevant provision of the Law as Section 1717-A(e)(2). *See* JMBA's Br. at 42-44. Presumably JMBA is referring to Section 1717-A(e)(5) of the Law which states, in pertinent part, "[i]f the application is denied, the reasons for the denial, including a description of deficiencies in the application, shall be *clearly stated* in the notice sent by the local board of school directors to the charter school applicant." 24 P.S. § 17-1717-A(e)(5) (emphasis added).

[7] Section 1717-A(i)(6) of the Law provides that CAB "shall give due consideration to the findings of the local board of directors and *specifically articulate* its reasons for agreeing or disagreeing with those findings in its written decision." 24 P.S. § 17-1717-A(i)(6) (emphasis added).

detail of the [proposed] curriculum," and "that alignment to standards need not be explicit so long as the substance of the applicant's academic plan would enable a student to learn the content of academic standards." JMBA's Br. at 40, 41. At bottom, JMBA claims that substantial compliance with the standards is sufficient.

With respect to the facilities plan, JMBA argues that CAB erred by supplementing the record and using this information as a basis to deny JMBA's appeal where the information was not "previously unavailable" as required by Section 1717-A(i)(6) of the Law, 24 P.S. § 17-1717-A(i)(6). CAB incorrectly faulted JMBA for losing its proposed facilities after the District denied its application and erred by requiring details in the facilities plan beyond that mandated by the Law. JMBA also argues that CAB erred in finding its governance plan to be legally deficient because the record established that JMBA would be governed by an independent board of trustees. Finally, JMBA maintains that in determining it would not be a model for other public schools, CAB erred in considering the academic performance of other charter schools and presuming, without basis, that JMBA would perform similarly.

### III. Discussion

We begin with JMBA's proposed curriculum since that issue is dispositive. *Summit Charter Sch. v. Pocono Mountain Sch. Dist. (Charter Sch. Appeal Bd.)*, 316 A.3d 196, 213 n.18 (Pa. Cmwlth. 2024) (noting charter school's "failure to present a curriculum that satisfies the 'comprehensive learning experiences' category is dispositive"). As indicated above, Section 1717-A(e)(2) of the Law requires that a charter school applicant show "[t]he capability . . . , in terms of support and planning, to provide comprehensive learning experiences to students pursuant to the adopted charter." 24 P.S. § 17-1717-A(e)(2). While

8

> [t]he term "comprehensive learning experiences" is not defined in the [Law], [] as applied, it broadly pertains to a charter school's curriculum, instruction strategies, financial plan, and educational administration. *See, e.g., McKeesport Area Sch. Dist. v. Propel Charter Sch. McKeesport*, 888 A.2d 912, 917-19 (Pa. Cmwlth. 2005) (addressing adequacy of student progress assessment program, special education program, discipline policy, and core curriculum areas).

*Summit Charter Sch.*, 316 A.3d at 207.

Section 1719-A of the Law further provides that an application shall include "the curriculum to be offered and the methods of assessing whether students are meeting educational goals." 24 P.S. § 17-1719-A. The Department of Education's regulations define "curriculum" as "[a] series of planned instruction *aligned with the academic standards in each subject* that is coordinated and articulated and implemented in a manner designed to result in the achievement at the proficient level by all students." 22 Pa. Code § 4.3 (emphasis added). While the policy set forth in the regulations is "that local school entities have the greatest possible flexibility in curriculum planning consistent with providing quality education and in compliance with the [Public] School Code," this flexibility is not unfettered and does have clear boundaries. 22 Pa. Code § 4.4(b). In particular, a school's curriculum must be "aligned with the academic standards in each subject," 22 Pa. Code § 4.3, and "be designed by school entities to achieve the academic standards under [section] 4.12 . . . and any additional academic standards as determined by the school entity." 22 Pa. Code § 4.4(a).

Despite JMBA's arguments to the contrary, there is substantial evidence in the record to support the numerous curricular deficiencies initially identified by the District and subsequently adopted by CAB. In compliance with the

Law, these deficiencies were "clearly stated" in the District's decision, and CAB "specifically articulated" its reasons for agreeing with the District. *See* Section 1717-A(e)(5) and 1717-A(i)(6) of the Law, 24 P.S. § 17-1717-A(e)(5), (i)(6). CAB's finding of fact 43 reiterates almost verbatim the findings of the District, stating:

> 43. [JMBA]'s proposed curriculum is not aligned with State standards as follows:
>
> a. Health and Physical [E]ducation, K-2 and 3-5, does not address the Healthful Living standard, CC.10.2.3.A-E.
>
> b. Health and Physical [E]ducation, 3-5, does not address the Physical Activity standard, CC.10.4.3.E.
>
> c. Environment and Ecology, grades 3-8[8] curriculum, does not address the standards for Agriculture and Community (4.4) and Humans and the Environment (4.5), in the required grade levels.[9]
>
> d. Science instruction in grades 3, 4 and 5 does not reflect all of the applicable technology and engineering standards.

---

[8] It is undisputed that JMBA plans to serve grades K-5 in its first year of operation. R.R. at 11a, 2234a. As this Court has previously held, to meet the statutory requirements, a charter school applicant need only present proposed curriculum for the grades to be served during its first year of operation. *Carbondale Area Sch. Dist. v. Fell Charter Sch.*, 829 A.2d 400, 409 (Pa. Cmwlth. 2003) (*Fell*). Therefore, any findings by CAB pertaining to grades other than K-5 are not relevant and cannot serve as grounds to deny JMBA's application. Such findings did not factor into this Court's decision.

[9] We note that the State standards for Environment and Ecology at section 4.4 is titled "Agriculture and Society," not "Agriculture and Community." *See* 22 Pa. Code Chapter 4, Appendix B. Also, the State standards for Humans and the Environment are found at section 4.8 rather than 4.5. *See id.* These are minor errors which do not effect the substance of CAB's findings, and would not prevent JMBA from identifying the standards at issue.

e. Social [S]tudies curriculum in K-2 does not reflect standards that are fully aligned to the [C]ivics and [G]overnment, [E]conomics, [G]eography and [H]istory requirements in those grade levels. The standards listed for K-2 are the 3rd grade standards.

f. Third grade Social Studies documents do not reflect alignment with all of the grade 3 [S]ocial [S]tudies standards, including CC.6.2.3C, F and G; CC.6.3.3.C; CC.6.4.3A; and CC.6.5.3H.

g. Career Education standards for grades 3, 5 and 8 are not reflected in the programming materials submitted.

h. Family and [C]onsumer [S]cience standards for grades 3 and 6 are not evident in the [S]ocial [S]tudies curriculum, [S]cience or any other subject.

i. Certain grade-level standards are assessed in other grades, which is inconsistent with the Pennsylvania grade-level standards requirements.

R.R. at 17a-18a (footnotes added). These deficiencies are clearly stated by reference to the subjects, grade levels, and State standards that were not met. The pinpoint citations to the standards make them both readily identifiable and easily accessible to JMBA in the Appendices to 22 Pa. Code Chapter 4.

JMBA argues that finding of fact 43(c) pertaining to Environment and Ecology failed for lack of specificity because "[t]here are dozens of standards and sub-standards in each grade level for Agriculture and [Society] and Humans and the Environment," and that it was "left to guess which of the many standards might have been regarded as deficient[.]" JMBA's Br. at 51. This assertion lacks merit. The only standards applicable to JMBA in these areas – given that it would serve grades K-5 in its first year of operation – are those listed for fourth grade. *See supra* n.8 [citing *Carbondale Area Sch. Dist. v. Fell Charter Sch.*, 829 A.2d 400, 409 (Pa.

11

Cmwlth. 2003) (*Fell*)]. Both the Agriculture and Society (4.4) and Humans and the Environment (4.8) components contain only 4 standards, each of which lists several substandards. This finite number of applicable standards is readily ascertainable from Appendix B to the regulations, and the fact that the District and CAB did not list each of the standards individually does not mean they were not "clearly stated" when the entire groups of standards are missing from JMBA's proposed curriculum.[10]

As for the substance of its proposed curriculum, JMBA bears the burden of demonstrating that CAB's determination was not supported by substantial evidence. *Summit Charter Sch.*, 316 A.3d at 209 (citing *Fell*, 829 A.2d at 403 n.1). CAB has consistently maintained in prior decisions, and reinforced in this particular matter, that the quality of a charter school's proposed curriculum is primary and can be dispositive:

> The curriculum of a school, any school, is one of the most significant building blocks of the educational program at that institution. *To not have the curriculum completed and fully aligned shows a lack of adequate planning*. As we have previously observed, *a charter school's failure to provide a sufficient curriculur plan is a basis for denial of an application*, and that plan must be fully developed at the time the application is filed, rather than being a goal or guideline that an appropriate curriculum will be developed later.

---

[10] JMBA also argues that CAB erred by imposing curriculum standards from the Standards Aligned System (SAS) website, which were not drafted and approved through the regulatory process and therefore are not legally binding. *See* JMBA's Br. at 45. However, this argument lacks merit as CAB's decision never mentions the SAS content, let alone bases its findings on them. Rather, CAB's findings regarding JMBA's proposed curriculum are based on the standards included in the Appendices to 22 Pa. Code Ch. 4.

12

*In re: Thomas Paine Charter Sch.*, CAB Docket No. 2009-04, filed Feb. 17, 2010, at 9 (emphasis added); *see also* R.R. at 32a (finding JMBA's "proposed curriculum . . . is not adequate to offer comprehensive learning experiences to its students as required by the [Law]" and concluding "that this deficiency on its own is sufficient ground to deny the [] application").

Here, there is substantial evidence supporting CAB's determination, and the information submitted by JMBA to rebut the curriculum deficiencies is lacking. For example, JMBA's curriculum was found not to be in alignment with the Health and Physical Education standard CC.10.2.3.A, which is: "Identify personal hygiene practices and community helpers that promote health and prevent the spread of disease." 22 Pa. Code Ch. 4, Appendix D. JMBA's rebuttal points to *two* pages of its curriculum, one pertaining to general classroom safety rules to share with Kindergarten students and the other to a single lesson on scientists and inventors, including new medicine and ways to fight diseases. *See* R.R. at 1591a, 1815a. Notably, this lesson indicates that it addresses certain State standards in History (8.3.3.A, C and D), and does not reference the Health and Physical Education standard at issue. *Id.* at 1815a. JMBA's responses to the findings that its curriculum failed to align with Health and Physical Education standards CC.10.2.3.B and E does not address *any* of the sub-standards for those components. In addition, JMBA's general assertions of compliance fail to meet its burden. *See, e.g.*, JMBA's Br. at 49 ("These standards were addressed through various healthy eating topics throughout the physical education curriculum").

As stated above, CAB found that JMBA's proposed Environment and Ecology curriculum did not address the standards for two components, Agriculture and Society and Humans and the Environment. JMBA points to a mere *two* pages

13

in its curricular documents in an effort to meet all of the standards in those components, and the identified pages contain information only generally related to the topics. *See* R.R. at 1795a, 1830a.

JMBA's proposed third grade Social Studies curriculum is particularly problematic as it was found not to align with State standards CC.6.2.3C, F and G; CC.6.3.3.C; CC.6.4.3.A; and CC.6.5.3.H. JMBA's rebuttal is clearly insufficient as it points to curriculum taught outside third grade – mostly in Kindergarten and first grade – and is frequently not on-point.

With respect to its proposed Career Education curriculum, the admittedly "*non-exhaustive* illustration of alignment" JMBA presented to CAB to rebut the purported deficiencies fails for multiple reasons. *See* R.R. at 2293a-94a (emphasis in original). The illustration does not address the standards for fifth grade at all; points mostly to curriculum taught in Kindergarten; fails to address many of the applicable sub-standards; and often is not on-point. Similarly, JMBA's rebuttal information pertaining to the deficiencies in its Family and Consumer Science curriculum is admittedly "non-exhaustive"; addresses only three sub-standards, leaving the majority unrebutted; points to Kindergarten and first grade curriculum; and is generalized and not on-point. *See id.* at 2294a.[11]

JMBA takes issue with CAB's findings that its proposed curriculum in multiple areas is deficient because it teaches certain standards in earlier grade years than required. *See* R.R. at 17a-18a (pertaining to the proposed curriculum in Environment and Ecology, Social Studies, Career Education, and Family and

---

[11] The deficiencies in JMBA's proposed curriculum are both numerous and significant in nature; therefore, we reject JMBA's claim that its curriculum is "substantially aligned" with State standards. Because of this, we decline to reach JMBA's argument that, under the Law, a charter school applicant's planned instruction need not be fully aligned with State standards, and that substantial alignment is sufficient, as that is not the case here.

Consumer Science). However, learning in most subject areas is cumulative. As CAB explained, "[t]he resources and materials to be used in each course must be age-appropriate for the grades to be served by the charter school. Failure to use age-appropriate material creates barriers to learning." *Id.* at 34a (internal citations omitted). *See also* District's Br. at 45-46 ("The standards are sequential across the grade levels and reflect the increasing complexity and rigor that students are expected to achieve."). In keeping with the requirements of the Law and regulations, "[e]xpecting the standards to be taught at the indicated grade level by subject area also correlates with the accountability standards for State assessment requirements for the P[ennsylvania System of School Assessment] exams." R.R. at 34a. Teaching standards outside the specified grade levels fails to account for students during the first year of the charter, or students thereafter who transfer from another school. As CAB aptly explained, this practice results in those students likely missing the opportunity for learning. *Id.* In short, if students are not taught the skills that are used on State assessments in the grades during which such assessments occur, that school would not be ensuring that all students have been provided with instruction meeting those standards and, thus, not equipping students to succeed.

## IV. Conclusion

In sum, CAB's findings with respect to the deficiencies in JMBA's proposed curriculum are supported by substantial evidence. CAB did not err in determining that the information and arguments JMBA submitted to rebut the deficiencies in its proposed curriculum failed to meet its burden. In addition, and notwithstanding JMBA's argument to the contrary, CAB's "opinion does not leave [JMBA] without guidance should it decide to apply for a charter again in the future." *Summit Charter Sch.*, 316 A.3d at 209. Given this determination, the primary

15

importance of a school's curriculum, and the numerous deficiencies here, we need not address JMBA's other arguments.

Accordingly, CAB's order affirming the District's denial of JMBA's third charter school application is affirmed.

_____

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

Judge Dumas did not participate in the decision for this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joan Myers Brown Academy: A String   :
Theory Charter School,                :
                 Petitioner   :
                             :
           v.             :   No. 679 C.D. 2023
                             :
School District of Philadelphia (State  :
Charter School Appeal Board),      :
              Respondent  :

# O R D E R

AND NOW, this 11th day of July, 2024, the order of the State Charter School Appeal Board in the above-captioned matter is hereby AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita
