Norristown Academy Charter School, :
                   Petitioner :
                                  :
        v. :
                                    :
Norristown Area School District :
(State Charter School Appeal :
Board), : No. 335 C.D. 2025
                 Respondent : Argued: October 9, 2025


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                 FILED: November 4, 2025

        Norristown Academy Charter School (Norristown Academy) petitions this Court for review of the State Charter School Appeal Board's (CAB) March 17, 2025 Final Order denying Norristown Academy's appeal and affirming the Norristown Area School District (District) Board of Education's (Board) decision that denied Norristown Academy's revised application for a charter (Revised Application). Norristown Academy presents four issues for this Court's review: (1) whether CAB's conclusion that Norristown Academy's contractual agreement with its educational services provider was not arm's-length was in accordance with the law or supported by substantial evidence; (2) whether CAB's conclusion that Norristown Academy's financial plan was not viable was in accordance with the law or supported by substantial evidence; (3) whether CAB's holding that Norristown Academy's curriculum was inadequate was in accordance with the law or supported by substantial evidence; and (4) whether CAB's Final Order violated Norristown

Academy's rights under both the Pennsylvania and United States Constitutions, as well as the requirements of Pennsylvania administrative law. After thorough review, this Court reverses.

Norristown Academy filed an application for a charter with the District on November 8, 2019, which the District denied on February 24, 2020. On May 20, 2020, Norristown Academy filed the Revised Application for a charter with the District. In the Revised Application, Norristown Academy proposed that its charter school will be open to all children in grades kindergarten through 8th grade and will implement the schoolwide enrichment model, which will focus on talent development, enrichment, engagement, and differentiated learning, supported by student self-selected investigative learning. Norristown Academy proposed to use differentiating curriculum so that all students are challenged and engaged to make continuous academic progress. Its proposal called for the following student enrollment numbers in the first five years: (a) 200 students in the first year; (b) 400 students in the second year; (c) 600 students in the third year; (d) 800 students in the fourth year; and (e) 1,000 students in the fifth year.

Norristown Academy entered into an agreement with CSMI, LLC (CSMI), an educational services management company, to assist Norristown Academy to make continuous academic progress (Management Agreement). CSMI was also the applicant that sought the Norristown Zoning Hearing Board's approval for the charter school's proposed site. CSMI's chief financial officer Bill Zarrilli (CFO Zarrilli) attested at the CAB hearing that CSMI was willing to provide an interest-free loan to Norristown Academy in an amount over $1,000,000.00, with a promise to waive at least $800,000.00 in management fees over 5 years.

In the Revised Application, Norristown Academy identified 50 West Brown Street, Norristown, Pennsylvania (PA) (Property) as the site for the charter school. The Property can only accommodate 400 students, which would satisfy the

2

charter school's projected needs for the first and second years. Norristown Academy reported that it will submit an application with a subsequent location to accommodate the remaining years of enrollment to the District for approval at the appropriate time.

On August 19, 2020, CAB voted to deny the Revised Application, concluding that Norristown Academy's Management Agreement with CSMI was not made at arm's-length, Norristown Academy's financial plan was not viable, and Norristown Academy's curriculum was inadequate. Norristown Academy appealed to this Court.[1,2]

Norristown Academy first argues that CAB's conclusion that Norristown Academy's Management Agreement with CSMI was not arm's-length was not in accordance with the law or supported by substantial evidence. Specifically, Norristown Academy contends that CAB's conclusion that the Management Agreement between Norristown Academy and CSMI was not arm's-length lacks any support in the facts, the Charter School Law (CSL),[3] this Court's precedent, or CAB's precedent. Norristown Academy asserts that CAB erroneously and exclusively relied upon the fact that the law firm currently representing Norristown Academy appeared on behalf of CSMI at a separate zoning hearing necessary for Norristown Academy to open the charter school, notwithstanding that separate counsel at all times advised Norristown Academy's Board of Trustees and

---

[1] "This Court's . . . review of [CAB's] determination 'is limited to whether constitutional rights were violated, errors of law were committed, or the decision is not supported by substantial evidence.'" *Summit Charter Sch. v. Pocono Mountain Sch. Dist. (Charter Sch. Appeal Bd.)*, 316 A.3d 196, 206 (Pa. Cmwlth. 2024) (quoting *Carbondale Area Sch. Dist.*, 829 A.2d 400, 403 n.1 (Pa. Cmwlth. 2003)).

[2] On August 1, 2025, Norristown Academy filed an application with this Court requesting leave to file a sur-reply brief, which this Court denied on September 16, 2025. This Court held oral argument on October 9, 2025.

[3] Act of March 10, 1949, P.L. 30, *as amended*, added by Section 1 of the Act of June 19, 1997, P.L. 225, 24 P.S. §§ 17-1701-A – 17-1751-A.

3

the District did not identify this issue as a ground for its denial prior to its briefing of the case before CAB.[4]

The District rejoins that CAB agreed that Norristown Academy and CSMI being represented by the same law firm, CSMI providing an interest-free loan to Norristown Academy in an amount over $1,000.000.00, with a promise to waive $9,000,000.00 in fees over five years without compensation, and CSMI securing the Property and zoning relief for Norristown Academy are evidence of a lack of arm's-length relationship between Norristown Academy and CSMI. Specifically, the District retorts that the relationship between Norristown Academy and CSMI is problematic when considering that CSMI is funding Norristown Academy's existence, including extending a $1.2 million loan, which could increase to $1.5 million to pay Norristown Academy's start-up expenses; both Norristown Academy's independent counsel Frank Catania, Esquire (Attorney Catania) and Norristown Academy's outside counsel Duane Morris, are paid by CSMI; Attorney Catania is counsel of another school operated by CSMI; CSMI provides a broad-range of services to Norristown Academy that relate to the management of the charter school's academic programs, curriculum, materials, and staffing; there is a severe lack of documentation of any arm's-length negotiations between Norristown Academy and CSMI; the Board of Trustees was recruited by CSMI's CEO Vahan

---

[4] Norristown Academy also argues that the District waived any objections to Norristown Academy's compliance with Section 1719-A(4) of the CSL, 24 P.S. § 17-1719-A(4) (an application to establish a charter school shall include the proposed governance structure of the charter school), by failing to include them in the denial. Specifically, Norristown Academy contends that nothing in the denial suggests that the District denied the Revised Application because of the manner in which zoning relief was obtained for the Property, or because of start-up funds that CSMI loaned to Norristown Academy. The District rejoins that CAB can consider issues raised in either a district's denial of a charter application or on appeal in its *de novo* review of a charter application. Although the District may not have used the exact language in its denial that it did before CAB and this Court, the District did raise concerns regarding the deep connection between Norristown Academy and CSMI. Accordingly, this Court declines to find waiver and will address the issue.

Gureghian (Gureghian) or by someone recruited by Gureghian; and CSMI has been involved in every aspect of Norristown Academy's charter school application.

Initially,

> [u]nder the CSL and [*West Chester Area School District v. Collegium Charter School*, 760 A.2d 452 (Pa. Cmwlth. 2000) (*Collegium*), *aff'd*, 812 A.2d 1172 (Pa. 2002)], **management agreements must be products of arm[']s-length negotiations between separate and independent entities**. In the absence of any express or specific provision in statute, regulation, or precedent that requires or prohibits a specific term, the parties have the freedom to negotiate and to contract.

*Insight PA Cyber Charter Sch. v. Dep't of Educ.*, 162 A.3d 591, 598 (Pa. Cmwlth. 2017) (emphasis added; footnote omitted).

The *Collegium* Court explained:

> Clearly, . . . the legislature did not want to entrust the management and operation of the charter school itself to entities seeking to make money from the school's management and operation; rather, that power is granted to the charter school's board of trustees who, as public officials, have a single purpose to promote the interests of pupils. To this end, [S]ection 1716-A(a) of the CSL vests the charter school's board of trustees with the "authority to decide matters related to the operation of the school, including, but not limited to, budgeting, curriculum, and operating procedures, subject to the school's charter." [24 P.S. § 17-1716-A(a)]. In addition, the trustees have "the authority to employ, discharge and contract with necessary professional and nonprofessional employes subject to the school's charter." [*Id*.] The board of trustees also determines the level of compensation and all terms and conditions of staff employment. [*See id*.] However, **the CSL does not prohibit charter schools from contracting out certain management and administrative responsibilities to a for-profit corporation**. Rather, the CSL grants charter schools all powers necessary or desirable for carrying out its charter, including, but not limited to, the power to acquire real property by purchase or lease and the power to make

5

contracts or leases for the procurement of services, equipment and supplies. [*See*] Sections 1714-A(a)(3) and 1714-A(a)(5) of the CSL, 24 P.S. § 17-1714-A(a)(3) and 17-1714-A(a)(5).

*Collegium*, 760 A.2d at 468 (emphasis added; footnotes omitted).

Here, Norristown Academy, a non-profit entity, has no income and, thus, can only fund its efforts through a loan from its educational services provider, CSMI, a for-profit entity.

> [**N**]**othing** in the [CSL] **prohibits the involvement of for-profit entities in the establishment and operation of a charter school**, so long as the school itself is not for-profit, the charter school's trustees have real and substantial authority and responsibility for the educational decisions, and the teachers are employees of the charter school itself.

*Id*. (emphasis added) (quoting CAB's *Collegium* Dec. at 23).

Norristown Academy's Board of Trustees has at all times been represented by independent and unrelated counsel, Attorney Catania of Catania & Parker, who independently and separately negotiated the loans and all subsequent Management Agreement terms with CSMI. Although Norristown Academy's outside counsel, Duane Morris, represented CSMI at the hearing before the Norristown Zoning Hearing Board, it did so as part of CSMI and Norristown Academy's efforts to obtain the necessary zoning variances to permit the charter school to open at the Property. Given that there was no conflict of interest between CSMI and Norristown Academy, such representation was not evidence of a lack of arm's-length relationship between Norristown Academy and CSMI. There is no allegation or evidence that Duane Morris ever represented either CSMI or Norristown Academy in negotiations or transactions between the two on any subject. Further, CAB's conclusion that CSMI's involvement in Norristown Academy's Revised Application was evidence that the Management Agreement was not a

"product of arm[']s-length negotiations between separate and independent entities[,]" was not supported by the record. *Insight PA*, 162 A.3d at 598. Moreover, there was no allegation or evidence that Norristown Academy's Board of Trustees did not "have real and substantial authority and responsibility for the educational decisions," or that "the teachers are [not] employees of [Norristown Academy] itself." *Collegium*, 760 A.2d at 468. Accordingly, CAB erred by concluding that Norristown Academy's Management Agreement with CSMI was not arm's-length.

Norristown Academy next argues that CAB's conclusion that Norristown Academy's financial plan was not viable was not in accordance with the law or supported by substantial evidence because CAB did not consider the entirety of the fees due to CSMI under the parties' Management Agreement. Specifically, Norristown Academy contends that CAB erroneously found that Norristown Academy's financial plan was inadequate solely because CSMI's on-the-record waiver of certain fees due under the Management Agreement was not in writing.

The District rejoins that assuming, *arguendo*, the on-the-record waiver was sufficient to waive CSMI's management fees for 2019, said waiver does not apply to the Management Agreement. Specifically, the District retorts that Norristown Academy's financial plan clearly indicates that it will not have the necessary funds to operate its charter school because of the significant fees the charter school is required to pay to CSMI in accordance with the Management Agreement.

Section 1719-A(9) of the CSL provides that a charter school application must include "[t]he financial plan for the charter school and the provisions which will be made for auditing the school . . . ." 24 P.S. § 17-1719-A(9).

> [T]his is not a rigorous requirement. To satisfy it, the charter school need not even submit a specific line-item budget. The CSL does not authorize, let alone require, the chartering authority or [] CAB to approve or disapprove a

7

charter school's proposed or final budget plan. **Perceived deficiencies in particular budget line items are not grounds for denying a charter**. To the contrary, at the charter school application phase, the budget plan need only be detailed enough to allow the chartering authority and [] CAB on appeal to "determinate [sic] that the applicant is capable of providing a comprehensive learning experience for students." *Cent*[.] *Dauphin Sch. Dist. v. Founding Coal. Infinity Charter Sch.*, 847 A.2d 195, 202 (Pa. Cmwlth. [2004]) (en banc) . . . . As this Court recently stated in an unreported panel decision, "[**a**] **financial plan only has to show that it has considered the budgeting issues and that based on reasonable assumptions**, *it will have the necessary funds to operate the school it proposes*." *McKeesport Area Sch. Dist. v. Young Scholars of McKeesport Charter Sch.* . . . (Pa. Cmwlth.[] No. 373 C.D. 2015, filed July 13, 2015)[, slip op. at 12, 2015 WL 5459790] (emphasis added).

*Insight PA*, 162 A.3d at 611 (bold emphasis added; citation omitted).

Here, the Management Agreement provides:

Section 7.06 Underpayment/Shortfall.

In order to fund any start-up related expenses of [Norristown Academy] and/or in the event that [Norristown Academy] does not receive funds timely from the [District] or at any point does not receive sufficient fund[s] to make its payment of the monthly [m]anagement [f]ee compensation at any time during the term of this [Management] Agreement, [CSMI] will provide an interest free loan for such shortfall which may be used to satisfy [Norristown Academy's] financial obligation(s) by paying its re-approved expenses, including but not limited to application costs and expenses. This obligation shall not exceed one million five hundred thousand dollars ($1,500,000[.00]) cumulatively unless agreed by [Norristown Academy] and [CSMI]. [CSMI] may elect, at its sole discretion, to waive payment or agree to delayed payment of any loan, [m]anagement [f]ee, or any other compensation for its services. Any non-payment or delay in payment of said funds in accordance with the terms set forth herein shall not constitute default by [Norristown Academy] or [CSMI]. Furthermore, [CSMI] will work in

good faith with [Norristown Academy] to readdress the [m]anagement [f]ee in the event [Norristown Academy] encounters financial distress and/or is on the verge of financial insolvency.

Reproduced Record (R.R.) at 337a.

Further, CFO Zarrilli testified:

[CFO] ZARRILLI: There's a [M]anagement [A]greement, correct, yes.

[PETER C. AMUSO, ESQUIRE, District Solicitor (SOLICITOR AMUSO)]: So[,] CSMI is going to charge [Norristown Academy] about $5,600[.00] a student for the first year and it goes up [3%] every year after that?

[CFO] ZARRILLI: So[,] in our agreement[] our fee is stated $5,600[.00] a year and subject to increases as you noted of[3%], the greater of CPI[5] or [3%]. CPI is defined in the agreement.

If you take a look at our budget, which I'm sure you have, CSMI will be earning zero management fee in year one, a very minimal management fee in year two. And over the first [5] years of operations, CSMI will earn a management fee that's on average maybe about 70[%] of its list management fee.

[SOLICITOR] AMUSO: That was a question we had. I guess all we have is the [M]anagement [A]greement. Is there another agreement that you're referring to?

[CFO] ZARRILLI: No, **I'm referring to the budget**.

[SOLICITOR] AMUSO: Let's look at the budget then. I'm looking at [p]age 6[.] . . . So according to the [M]anagement [A]greement, [Norristown Academy] would owe CSMI 1.12 million dollars, correct?

[CFO] ZARRILLI: Which year are you referring to?

---

[5] The CPI is "the consumer price index for the Greater Philadelphia Region." R.R. at 336a.

9

[SOLICITOR] AMUSO: Year one, [$]5,600[.00] times 200 students.

[CFO] ZARRILLI: At list, yes.

[SOLICITOR] AMUSO: But you have only budgeted $342,689[.00].

[CFO] ZARRILLI: Actually, for year one, that $342,689[.00] includes zero management fee. That's other expenses.

[SOLICITOR] AMUSO: What happened to the management fee?

[CFO] ZARRILLI: Well, in year one, the school is really not going to be able to pay a management fee. We recognize that. We understand that. **We're prepared not to charge a management fee for year one**.

[SOLICITOR] AMUSO: Do you have that in writing? Is there a written agreement?

[CFO] ZARRILLI: Well, **per the terms of the [M]anagement [A]greement**, **it gives CSMI the latitude to waive fees in its sole discretion**.

R.R. at 82a (emphasis added).

Given Section 7.06 of the Management Agreement and CFO Zarilli's testimony, the "reasonable assumption[]" is that CSMI will waive its management fees and/or significantly reduce them in the first five years, so that Norristown Academy will remain solvent. *Insight PA*, 162 A.3d at 611 (quoting *McKeesport*, slip op. at 12). Thus, Norristown Academy's "financial plan . . . show[s] that it has considered the budgeting issues and that based on reasonable assumptions, it will have the necessary funds to operate the school it proposes." *Id*. Accordingly, CAB erred by concluding that Norristown Academy's financial plan was not viable.

Norristown Academy next argues that CAB's holding that Norristown Academy's curriculum was inadequate, was not in accordance with the law or supported by substantial evidence because certain curricula were not properly

10

aligned with Pennsylvania's educational standards. Specifically, Norristown Academy contends that CAB's holding that its curriculum was noncompliant with the CSL was not supported by any citation to the curriculum itself, but rather Solicitor Amuso's unverified statements at the December 2019 public hearing. Further, Norristown Academy asserts that CAB improperly based its adjudication on school curriculum for grades that it will not have in its first year of operation, and on curriculum standards that this Court has held do not apply to brick and mortar charter schools.

The District rejoins that Norristown Academy's curriculum omits all standards for environmental studies for 3rd, 4th, 5th, 6th, and 8th grade curriculum. The District further retorts that there is no stand-alone ecology and environmental studies curriculum. The District maintains that Norristown Academy is relying on specific teachers to include the missing standards in their day-to-day lesson plans and merely refer teachers to the Standards Aligned System website without providing the necessary standards to ensure that the lesson plans align with Pennsylvania academic standards.

This Court has explained:

> Subsection (ii) of Section 1717-A(e)(2) [of the CSL] requires that charter school applicants show capability "to provide comprehensive learning experiences to students pursuant to the adopted charter." 24 P.S. § 17-1717-A(e)(2)(ii). The term "comprehensive learning experiences" is not defined in the CSL, but as applied, it broadly pertains to a charter school's curriculum, instruction strategies, financial plan, and educational administration. *See, e.g., McKeesport* . . . , 888 A.2d at 917-19 . . . (addressing adequacy of student progress assessment program, special education program, discipline policy, and core curriculum areas).

*Summit Charter Sch. v. Pocono Mountain Sch. Dist. (Charter Sch. Appeal Bd.)*, 316 A.3d 196, 207 (Pa. Cmwlth. 2024).

11

However, within this category, [CAB] has consistently maintained that the quality of the charter school's proposed curriculum is primary and can even be dispositive:

> The curriculum of a school, any school, is one of the most significant building blocks of the educational program at that institution. To not have the curriculum completed and fully aligned shows a lack of adequate planning. As we have previously observed, *a charter school's failure to provide a sufficient curricular plan is a basis for denial of an application*, and that plan must be fully developed at the time the application is filed, rather than being a goal or guideline that an appropriate curriculum will be developed later.
>
> *In Re: Thomas Paine Charter Sch*[.], CAB Docket No. 2009-04 (Feb. 17, 2010), at 9 (italics added) (holding that "significant omissions" in charter applicant's proposed curriculum meant that applicant could not provide comprehensive learning experiences to students); *see also Joan Myers Brown Acad. v. Sch. Dist. of Phila.*, CAB Docket No. 2022-02 (June 16, 2023), at 25; (concluding that "[t]he proposed curriculum for the [c]harter [s]chool is not adequate to offer comprehensive learning experiences to its students as required by the CSL. The Board concludes that this deficiency on its own is sufficient ground to deny the charter application."); *In Re: Appeal of Env't Charter Sch. at Frick Park*, CAB Docket No. 2007-05 (Mar. 28, 2017), at 7 (stating that applicant's failure to provide a sufficiently detailed curriculum at time of application "is sufficient grounds for denial of the charter").

*Summit Charter Sch.*, 316 A.3d at 207.

At the outset, Norristown Academy is correct that it is only required to include in its Revised Application the school curriculum for grades that it will have in its first year of operation. *See Carbondale Area Sch. Dist. v. Fell Charter Sch.*, 829 A.2d 400 (Pa. Cmwlth. 2003). Because Norristown Academy "indicated in its [Revised] Application that it will only serve kindergarten through [5th] grade during

12

the first year it enrolls students[,]" CAB's conclusion that Norristown Academy's proposed curriculum for 7th grade technology and engineering education only aligns with 16 of 60 state standards cannot stand as a reason for denial. *Carbondale*, 829 A.2d at 409. Further, CAB's conclusion that the Revised Application omits all state standards for environmental studies from 6th and 8th grade curriculum is also not relevant and cannot be the basis for denial.

Relative to CAB's conclusion that there was no alignment of environmental studies for 3rd, 4th, and 5th grade curriculum, and no stand-alone ecology and environmental studies curricula, a review of Norristown Academy's science curriculum for kindergarten through 5th grade reveals that ecology and environmental studies are included therein. *See generally* Certified Record Volume 2 (C.R.) at 1142-1350;[6] *see also* C.R. at 1142 (Overview K-8 Curriculum - "[t]he schools inquiry-based science curricula are . . . aligned with . . . the PA Academic Standards for Environment and Ecology[.]"); 1145 (Grade K Science Curriculum - "The [] kindergarten science curriculum is aligned with the . . . PA Academic Standards for Environment and Ecology[.]"); 1179 (Grade 1 Science Curriculum - "The [] first grade science curriculum is aligned with the . . . PA Academic Standards for Environment and Ecology[.]"); 1210 (Grade 2 Science Curriculum - "The [] second grade science curriculum is aligned with the . . . PA Academic Standards for Environment and Ecology[.]"); 1239 (Grade 3 Science Curriculum - "The [] third grade science curriculum is aligned with the . . . PA Academic Standards for Environment and Ecology[.]"); 1277 (Grade 4 Science curriculum - "The [] fourth grade science curriculum is aligned with the . . . PA Academic Standards for Environment and Ecology[.]"); 1318 (Grade 5 Science Curriculum - "The [] fifth

---

[6] Because the Certified Record pages are not numbered, this Court references their electronic pagination herein.

grade science curriculum is aligned with the . . . PA Academic Standards for Environment and Ecology[.]").

Moreover, with respect to CAB's application of the Department of Education's (PDE) Chapter 4 Regulations, "the more detailed requirements in [the] PDE Chapter 4 Regulations **apply to cyber charter school** applicants, [] not to brick and mortar charter school applicants[.]" *Virtual Preparatory Acad. of PA Cyber Charter Sch. v. Pa. Dep't of Educ. (State Charter Sch. Appeal Bd.)* (Pa. Cmwlth. No. 1053 C.D. 2022, filed December 17, 2024), slip op. at 13 (emphasis added).[7] Because Norristown Academy is a brick and mortar charter school, PDE's Chapter 4 Regulations do not apply herein. Accordingly, CAB erred by concluding that Norristown Academy's curriculum was inadequate, was not in accordance with the law, or supported by substantial evidence.

For all of the above reasons, CAB's Final Order is reversed.[8]

_____
ANNE E. COVEY, Judge

Judge Fizzano Cannon did not participate in the decision in this matter.

---

[7] While not binding, unreported opinions of this Court issued after January 15, 2008, may be cited for their persuasive authority pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *Virtual Preparatory Academy* is cited for its persuasive value.

[8] Given this Court's disposition of Norristown Academy's first three issues, the fourth issue is moot.

14

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Norristown Academy Charter School, : 
         Petitioner : 
          : 
         v. : 
          : 
Norristown Area School District : 
(State Charter School Appeal : 
Board), :     No. 335 C.D. 2025
         Respondent : 

## O R D E R

AND NOW, this 4th day of November, 2025, the Charter School Appeal Board's (CAB) March 17, 2025 Final Order is REVERSED, and the matter is REMANDED to CAB to direct the Norristown Area School District to issue Norristown Academy Charter School a charter.

Jurisdiction is relinquished.

_____
ANNE E. COVEY, Judge